Brent S. Buchsbaum (SBN CA 211279)
brent@buchsbaumshaag.com
Laurel N. Haag (SBN CA 211279)
laurel@buchsbaumhaag.com
Law Offices of Buchsbaum & Haag, LLP
100 Oceangate, Suite 1200
Long Beach, California 90802
Telephone: 562.733.2498

Attorneys for Plaintiff Stacey Campbell

Ashley Farrell Pickett (SBN 271825)
ashley.farrellpickett@gtlaw.com
Oscar E. Peralta (SBN 335450)
oscar.peralta@gtlaw.com
Greenberg Traurig, LLP
1840 Century Park East, Suite 1900
Los Angeles, California 90067
Telephone: 310.586.7700

Attorneys for Defendant Kering Eyewear USA, Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STACEY CAMPBELL, individually, and as a representative of other aggrieved employees,<br><br>          Plaintiff,<br><br>v.<br><br>KERING EYEWEAR USA, INC., a Corporation, and DOES 1 through 250, inclusive,<br><br>          Defendants. | CASE NO. 2:24-cv10398-MCS-PD<br><br>**NOTICE OF MOTION AND JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS AND PAGA ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[Filed and served concurrently with Declaration of Brent Buchsbaum, and Proposed Order]<br><br>Date:     May 12, 2025<br>Time:     9:00 a.m.<br>Dept.:    7C |

1

JOINT MOTION FOR PRELIMINARY APPROVAL

ACTIVE 708735086v2

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on _____, 2025 at 9:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 7C of the United States District Court for the Central District of California, located at 350 W. 1st Street, 7th Floor, Los Angeles, California 90012, Plaintiff Stacey Campbell ("Plaintiff") and Defendant Kering Eyewear USA, Inc. ("Defendant," and together with Plaintiff, "Parties") will, and hereby do, jointly move the Court for an order:

1.     Preliminarily approving the settlement of Plaintiff's class action and Private Attorneys General Act ("PAGA") claims reached by the Parties, as set forth in the Settlement Agreement ("Settlement" or "Agreement") attached as **Exhibit 1** to the concurrently filed Declaration of Brent Buchsbaum;

2.     Granting conditional certification of the following class for settlement purposes only: all current and former Brand Ambassadors of Kering Eyewear USA, Inc. employed in California between February 9, 2020, and the date of preliminary approval ("Class");

3.     Appointing Brent Buchsbaum of The Law Offices of Buchsbaum & Haag, LLP as counsel for the Class;

4.     Appointing Plaintiff Stacey Campbell as representative of the Class;

5.     Approving the form of the "Notice of Class and PAGA Action Settlement" ("Notice") and the "Opt-Out/Request for Exclusion Form," attached to the Parties' Agreement as Exhibit A;

6.     Authorizing mailing of the Notice and Opt-Out/Request for Exclusion Form to Class Members by first-class United States mail to their last known addresses within fourteen (14) calendar days of the date of preliminary approval; and

7.     Setting a hearing to consider and determine (i) whether the Settlement should be finally approved, (ii) whether Class Counsel's application for attorneys' fees and costs should be approved, and (iii) whether the application for a service award to Plaintiff should be approved, at the earliest possible date but not sooner than 100 days after preliminary

1  approval.

2       This Joint Motion is based on this Notice of Motion, the Memorandum of Points and

3  Authorities, the Declaration of Brent S. Buchsbaum, all pleadings in this action, and such

4  other written and oral argument as the Court may entertain on this Motion.

5                                    *Respectfully submitted*,

6  Dated: March 21, 2025                Greenberg Traurig, LLP

7

8                                    By:  /s/Ashley Farrell Pickett
                                        Ashley Farrell Pickett
9                                        Attorneys for Defendant
                                        Kering Eyewear USA, Inc.
10

11  Dated: March 21, 2025               Law Offices of Buchsbaum & Haag LLP

12

13                                   By:  /s/Brent S. Buchsbaum
                                        Brent S. Buchsbaum
14                                       Attorney for Plaintiff Stacey Campbell

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT MOTION FOR PRELIMINARY APPROVAL

ACTIVE 708735086v2

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ........................................................................................ 1

II.   PROCEDURAL BACKGROUND ............................................................ 2

III.  THE PROPOSED SETTLEMENT ........................................................... 3

IV.   THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD RECEIVE PRELIMINARY APPROVAL ...................................... 6

    A.    A Class Exists for Purposes of Settlement. ............................................. 6

        1.    The Settlement Class is Sufficiently Numerous. .................................. 6

        2.    The Settlement Class Resolves Common Questions. ........................... 7

        3.    The Claims of the Named Plaintiff Are Typical of the Claims of Class Members. ...................................................... 8

        4.    Plaintiff Will Fairly and Adequately Protect the Interests of the Settlement Class. ............................................... 9

        5.    The Settlement Satisfies the Predominance and Superiority Requirements of Rule 23(b). .......................... 9

    B.    The Proposed Settlement is Fair, Reasonable, and Adequate. ...................... 10

        1.    The Proposed Settlement is Fair, Reasonable, and Adequate. ..................................... **Error! Bookmark not defined.**

V.    THE PROPOSED CLASS NOTICE SHOULD BE APPROVED. ......................... 16

VI.   A FINAL APPROVAL HEARING SHOULD BE SET. ................................... 17

VII.  CONCLUSION ........................................................................................ 17

JOINT MOTION FOR PRELIMINARY APPROVAL

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff Stacey Campbell ("Plaintiff") sued Kering Eyewear USA, Inc. ("Defendant" and together with Plaintiff, "Parties") on behalf of a putative class of current and former Brand Ambassadors of Kering employed in California between February 2, 2020, and the present ("Class"). Following the Parties' thorough investigation of the facts and law pertinent to Plaintiff's theories of liability, the Parties have resolved her class and PAGA claims and hereby jointly seek preliminary approval of the Parties' proposed Settlement Agreement.[1]

Though Plaintiff and Defendant fundamentally disagree about the merits of the claims and the chances for certification, the Parties recognized early in the case the significant risk each side faced and the significant expense of litigating the matter through trial. Seeing the potential value of early resolution—particularly given the relatively small size of the Class which consists of approximately 30 putative members—the Parties engaged in thorough settlement discussions and an informal exchange of information that included: a production of Plaintiff's earning statements, expense reimbursement requests, an anonymized class list, and sample arbitration agreements signed by the Class; as well as an informal exchange of the Parties' positions on the merits of Plaintiff's unpaid wage and reimbursement theories that included a substantive discussions of applicable case law. This was also preceded by multiple meet and confer conferences between the Parties regarding deficiencies Defendant identified in Plaintiff's pleadings. Ultimately, the Parties reached a settlement after weeks of deliberation, meetings with their clients, and evaluation of the claims and attendant risks.

The Parties respectfully request that the Court approve the Settlement and grant conditional certification of the proposed Class for settlement purposes only because, for the reasons below, it is "fair reasonable, and adequate," Fed. R. Civ. Proc. 23(e)(2), and it "is

---

[1] The Parties' Settlement Agreement is attached as **Exhibit 1** to the Declaration of Brent Buchsbaum ("Buchsbaum Decl.").

ACTIVE 708735086v2

the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls with the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). The Parties also request that the Court appoint Brent Buchsbaum as counsel for the Class, appoint Plaintiff as Class Representative, approve the form of the Notice and Opt-Out Form, authorize the Parties to mail these forms to the Class, and set a final approval hearing.

## II. <u>PROCEDURAL BACKGROUND</u>

On February 9, 2024, Plaintiff filed a Class Action Complaint against Defendant in the Superior Court of the State of California, County of Los Angeles, entitled *Stacey Campbell v. Kering Eyewear USA, Inc.*, Case No. 24STCV03552 ("State Court Action"). Plaintiff asserted the following purported causes of action premised on alleged violations of the California Labor Code: (1) unpaid overtime; (2) non-compliant wage statements; (3) failure to pay all wages at termination; and (4) unreimbursed business expenses. Plaintiff also asserted a cause of action for alleged violations of California's Unfair Competition Law. On August 12, 2024, Plaintiff filed a First Amended Class Action Complaint to assert an additional cause of action for civil penalties under PAGA.

On December 3, 2024, Defendant removed the State Court Action to the United States District Court for the Central District of California. Following removal, the Parties met and conferred regarding various deficiencies Defendant identified in Plaintiff's Second Amended Complaint with the hopes of reaching a resolution that avoided the necessity of Defendant's contemplated motion to dismiss for failure to state a claim. On December 16, 2024, Plaintiff filed a Third Amended Complaint. That same day, Plaintiff's Class and PAGA Action was transferred to the Hon. Mark C. Scarsi's calendar and ordered related to Plaintiff's separate wrongful termination action ("Plaintiff's Individual Action").

Given the Parties' thorough meet and confer efforts—both telephonically and over email—regarding the merits of Plaintiff's claims and Defendant's defenses, the Parties agreed to engage in informal settlement discussions. On January 15, 2025, following several

rounds of discussions, the Parties' reached a settlement and subsequently memorialized it in a long-form agreement. On January 21, 2025, upon request from the Parties, the Court entered an order vacating Defendant's responsive pleading deadline and set March 21, 2025, as the deadline for Plaintiff to move for preliminary approval.[2]

## III.    **THE PROPOSED SETTLEMENT**

Because the Settlement Agreement contains the full terms of the settlement for the Court's review (*see* Buchsbaum Decl., Ex. 1), only the most salient points are set forth here. Briefly, the agreement provides for a common fund of $25,000, allocated as follows:

> (a) a maximum of $6,250 (25% of the Gross Fund Value) for the payment of Class Counsel's Attorney's Fees; (b) a maximum of $2,000 for the payment of Class Counsel's Costs; (c) $1,125 to the State of California for its 75% share of the $1,500 allocated for settlement of the PAGA claims; (d) $375 to the Aggrieved Employees for their 25% share of the $1,500 allocated for settlement of the PAGA claims; (d) a maximum of $1,500 as a Service Award to Plaintiff; (e) a maximum of $700 for Settlement Administrator Costs; and (f) an estimated $13,050 to be distributed as Settlement Payments to Class Members.

(Buchsbaum Decl., Ex. 1, §§ I.15, I.18.) Sums not awarded by the Court will revert to the Class and not to Defendant. (*Id.*) The employer's share of any payroll taxes will be paid separately and apart from the Settlement and shall not be deducted from the Gross Fund Value. (*Id.* § IV.15.)

**Settlement Classes.** The Settlement is based on the following class definition: all current and former Brand Ambassadors of Kering Eyewear USA, Inc. employed in California between February 9, 2020, and the date of preliminary approval. (*Id.* § I.5, I.8.)

**Consideration Paid to Class Members.** The Parties estimate $13,050 will be

---

[2] For the avoidance of doubt, the Parties' Settlement resolves Plaintiff's class and PAGA action claims only; her individual action for wrongful termination remains pending before the Court and is not impacted by the Settlement.

3

distributed to Class Members as Settlement Payments. Class Members need not do anything to participate in the Settlement—they will automatically receive their share of the Settlement unless they timely submit a Request for Exclusion. (*Id*. § IV.15(b).) The Settlement Administrator will calculate each Class Member's individual Settlement Payment based on the number of workweeks worked (determined by that Class Member's hire and termination dates) during the Class Period. (*Id*. § IV.12.) The individual Settlement Payments will be allocated as 20% wages and 80% as interest/penalties. (*Id.* § IV.12(d).)

**Release.** In exchange for their Settlement Payments, Class Members will release Defendant and the Released Parties (as defined in section I.30 of the Agreement) from:

> all claims pled in the Operative Complaint and PAGA Notice and any claims that were, or reasonably could have been or still could be, pled based on facts alleged, or in any way related to the facts contained, in the Operative Complaint and PAGA Notice, including all claims for failure to pay for all hours worked, unpaid wages (including minimum wage, straight time, overtime and double time), failure to pay premium wages at the correct regular rate, failure to pay final wages, failure to provide accurate wage statements, failure to reimburse business expenses, and unlawful business practices under the California Labor Code and/or the California Business and Professions Code, and any other claims for restitution or equitable relief, statutory penalties available for any of the foregoing, and attorneys' fees and costs.

(*Id.* § I.28.)

**Notice, Opting Out, and Objecting.** Notice will be provided through direct mail and, subject to Court approval, will be in the form attached to the Settlement as Exhibit A. The Notice describes the nature of the litigation, advises Class Members of the terms of the Settlement (including the full release language, the maximum individual recovery, and an explanation of the distribution formula), informs them that they need not take further action to participate, and provides instructions for those who want to opt-out or object to the Settlement. (Buchsbaum Decl. Ex. 1, Ex. A.)

JOINT MOTION FOR PRELIMINARY APPROVAL

The Settlement Administrator will send the Class Notice by first-class United States mail to the last known address for each Class Member, based on Defendant's records. (Buchsbaum Decl. Ex. 1, § IV.27.) If any Class Notice is returned as undeliverable and without a forwarding address after the date of the initial mailing, the Settlement Administrator will use reasonable and customary efforts to locate a better address, including a skip trace or other search efforts. (*Id.*) If this procedure reveals a new address, the Settlement Administrator shall re-mail the Class Notice to the new address. (*Id.*)

Class Members who wish to be excluded from the Settlement must submit an Opt-Out/Request for Exclusion Form (which will be sent with the Notice) to the Settlement Administrator. (*See id.* § IV.15(b); *see also id.* at Ex. B to Ex. 1.) Class Members who wish to object may do so by following the procedure set forth in the Notice.

**Service Award to Class Representative.** At final approval, Plaintiff will apply to the Court and present evidence in support of a service award for Plaintiff totaling up to $1,5000. Defendant does not oppose this request. (*Id.* § IV.6.)

**Attorneys' Fees and Costs.** At final approval, class counsel will apply to the Court for a total award of $6,250, which constitutes twenty-five percent (25%) of the Gross Fund Value, plus costs of up to $2,000. Plaintiff will present evidence at final approval that the fees and costs are reasonable under applicable law. Defendant does not oppose these requests. (*Id.* §§ IV.7, IV.11-12.) The amount of fees and costs sought will be disclosed in the Notice.

**Claims Administration Costs.** Administration costs include the costs arising from printing, distributing, and tracking documents for the Settlement, calculating the amounts due to Class Members, and executing the other duties set forth in the Agreement. These costs, which are not to exceed $750, will be paid from the common fund. (*Id.* § VI.9.)

**PAGA Settlement Amount.** Subject to Court approval, the Parties agree that $1,500 will be allocated to settle Plaintiff's PAGA claims. This PAGA Allocation will be distributed as follows: 75% (which totals $1,125) shall be paid to the State of California and the remaining 25% (which totals $375) shall be paid to the Aggrieved Employees on a

5

ACTIVE 708735086v2

proportionate basis. (*Id.* § I.22.)

## IV. THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD RECEIVE PRELIMINARY APPROVAL.

"Judicial policy strongly favors settlement of class actions." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 252 (N.D. Cal. 2015). When parties settle a class action before a class certification decision, the Court must "peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).

Preliminary approval of a class settlement is generally a two-step process. First, the Court must assess whether a class exists. *Staton*, 327 F.3d at 952 (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)). In assessing the requirements of settlement-only class certification, a court may properly consider that there will be no trial, and that fact-intensive issues that would accompany a trial on the merits of the elements of the claims, would be replaced by a settlement formula. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, . . . for the proposal is that there be no trial"). Second, the Court must "determine whether the proposed settlement is fundamentally fair, adequate, and reasonable." *Id.* (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

### A. A Class Exists for Purposes of Settlement.

To establish provisional certification, Plaintiff must demonstrate that each element of Rule 23(a) and at least one of the requirements of Rule 23(b) are satisfied. *See Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). The proposed Settlement Class meet these requirements. The Parties therefore request that the Court conditionally certify the class identified in section III, above, for settlement purposes only.

### 1. The Settlement Class is Sufficiently Numerous.

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." For purposes of Settlement only, the Parties agree that the numerosity

ACTIVE 708735086v2

requirement is met here as the Settlement Class includes approximately 30 members. *Ries v. Ariz Beverages USA LLC*, 287 F.R.D. 523, 526 (N.D. Cal. 2012) (holding a class that consisted of less than twenty-one members does not satisfy the numerosity requirement).

That said, Defendant maintains that, absent settlement, Plaintiff will be unable to certify the Class based on lack of numerosity. Here, 15 out of the 30 Class Members signed valid and enforceable arbitration agreements. It is well-established that "plaintiffs who are not subject to an arbitration agreement cannot represent a class of persons who are." *Pardo v. Papa, Inc.*, 2024 U.S. Dist. LEXIS 234921, at *6 (N.D. Cal. Dec. 31, 2024); *Campanelli v. Image First Healthcare Laundry Specialists, Inc.*, 2018 U.S. Dist. LEXIS 215287, at *7-8 (N.D. Cal. Dec. 21, 2018) ("Though plaintiff is not subject to an arbitration agreement, he seeks to represent a Rule 23 class that includes drivers who are subject to arbitration agreements. The Ninth Circuit has foreclosed the viability of that proposition."). Thus, Defendant contends, absent settlement, that the Class is not capable of certification on numerosity grounds.

### 2.    The Settlement Class Resolves Common Questions.

Rule 23(a)(2) requires a showing of "questions of law or fact common to the class." The class members' claims must "depend upon a common contention' such that 'determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] in one stroke.'" *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011)). Plaintiff need only show that there is a "single significant question of law or fact." *Id.*

Here, because the Parties have resolved their disputes and request certification for settlement purposes only, they will not need to prove any individualized issues relating to liability—i.e., the merits of the claims themselves. As a result, the facts that define the Settlement Class—employment with Defendant as a Brand Ambassador during the Class Period—satisfy Rule 23(a)(2)'s commonality requirement.

JOINT MOTION FOR PRELIMINARY APPROVAL

### 3.    The Claims of the Named Plaintiff are Typical of the Claims of Class Members.

Rule 23(a)(3) requires that the claims of the representative parties must be typical of the Class Members' claims. "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). The test is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named Plaintiff, and whether other class members have been injured by the same course of conduct." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011).

Plaintiff asserts that her claims are typical of those of the Class because she occupied the same position as the Class Members and has the same interests: recovery of unpaid monies for Kering's purported misclassification and alleged failure to reimburse for mileage reimbursements and home internet expenditures. Plaintiff also asserts her claims arise from a common course of conduct and legal theories, including a purported common policy of: classifying Class Members as exempt outside salespersons even though they were not working more than half of their working time in the field selling, as required by California's outside salesperson exemption; precluding Brand Ambassadors from requesting reimbursement for home internet expenses; and not adequately reimbursing Brand Ambassadors for the costs of business-related travel. Plaintiff alleges that Defendant's common policies applied to all Class Members with the only difference among Class Members being the extent of their individual damages.

While Defendant does not oppose class certification for settlement purposes only, Defendant maintains that Plaintiff cannot satisfy the typicality requirement. For example, as discussed in Section IV.A.1, Plaintiff's claims are not typical given that unlike the majority of the Class she purports to represent, Plaintiff's claims are not subject to a valid and enforceable arbitration agreement. For this, and other reasons, Plaintiff's claims are not typical to those of the Class. *Campanelli*, 2018 U.S. Dist. LEXIS 215287, at *7-8 (N.D. Cal. Dec. 21, 2018) ("Though plaintiff is not subject to an arbitration agreement, he seeks

8

JOINT MOTION FOR PRELIMINARY APPROVAL

to represent a Rule 23 class that includes drivers who are subject to arbitration agreements. The Ninth Circuit has foreclosed the viability of that proposition.").

That said, the Parties agree for settlement purposes only, that Plaintiff can satisfy the typicality requirement.

### 4.    Plaintiff Will Fairly and Adequately Protect the Interests of the Settlement Class.

Rule 23(a)(4) requires the representative parties to "fairly and adequately protect the interests of the class." Adequacy is satisfied where (i) the interests of the proposed class representatives are not antagonistic to the interests of the Class, and (ii) counsel for the class is qualified and competent to vigorously prosecute the action. *See Staton*, 327 F.3d at 957.

Plaintiff's interests are aligned with those of the Class because Plaintiff alleges that she was injured in the same manner and seeks identical relief as the Class. Further, having volunteered to serve as a class representative, she has taken a leadership role in the litigation, and demonstrated a commitment to bringing about the best results possible for her fellow Class Members. Class Counsel is not aware of any actual conflicts Plaintiff has with the Class.

Likewise, Plaintiff's Counsel satisfies the adequacy requirement. In evaluating class counsel's adequacy, "a court may examine the attorneys' professional qualifications, skill, experience, and resources," and "may also look at the attorneys' demonstrated performance in the suit itself." *In re Emulex Corp.*, 210 F.R.D. 717, 720 (C.D. Cal. 2002). Class Counsel has significant qualifications and experience to vigorously prosecute this action, and has performed extensive work to date identifying and investigating potential claims in this action, and successfully negotiated the proposed Settlement. (Buchsbaum Decl. ¶1-8.) The Parties therefore agree that, for settlement purposes only, the adequacy requirement is satisfied.

### 5.    The Settlement Satisfies the Predominance and Superiority Requirements of Rule 23(b).

Rule 23(b)(3) poses two inquiries: (1) whether questions of law or fact common to

9

ACTIVE 708735086v2

the class members predominate over questions affecting only individual members, and (2) whether a class action is superior to other available methods for the fair and efficient adjudication of the controversy. As noted above, "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, . . . for the proposal is that there be no trial." *Amchem* 521 U.S. at 620.

Here, the Parties agree for purposes of this Settlement only that certification of the Settlement Class is appropriate under Rule 23(b)(3) because (1) the Settlement obviates the litigation of individual liability and damage issues, (2) "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, [(3)] and . . . a class action is superior to other available methods for the fair adjudication of the controversy." *See* Fed. R. Civ. P. 23(b)(3). Therefore, conditional certification is proper under Rule 23(b)(3).

A class settlement is also a superior method of adjudication as compared to individual trials. "Judicial policy strongly favors settlement of class actions." *Bellinghausen*, 306 F.R.D. at 252; *see also Franklin v. Kaypro*, 884 F.2d 1222, 1225 (9th Cir. 1989) ("Litigation settlements offer parties and their counsel relief from the burdens and uncertainties inherent in trial. . . . The economics of litigation are such that pre-trial settlement may be more advantageous for both sides than expending the time and resources inevitably consumed in the trial process."). Any difficulties in managing a class trial—which Defendant maintains Plaintiff will be unable to establish—are removed by this Settlement.

### B.    The Proposed Settlement is Fair, Reasonable, and Adequate.

To determine whether a proposed settlement is fair, reasonable, and adequate, the Court first considers whether (a) it is the result of non-collusive negotiations, *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079, and it must then consider several factors bearing on the agreement's fairness, including, but not limited to: (b) the strength of the Plaintiff' case, and the risk, expense, complexity, and likely duration of further litigation; (c) the amount offered in settlement; (d) the extent of discovery completed and the stage of

ACTIVE 708735086v2

the proceedings; (e) the experience and views of counsel; and (f) the reaction of the class members to the proposed settlement, *see Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003). An analysis of these factors shows that the Settlement is fair, adequate, and reasonable.

### 1.    The Settlement Is the Result of Arm's-Length Negotiations.

The Parties conducted significant investigation of the facts and law during the prosecution of this Action. This included multiple meet and confer conferences between the Parties regarding deficiencies Defendant identified in Plaintiff's pleadings; an exchange of informal discovery between the Parties that included, among other things, a production of Plaintiff's earning statements, expense reimbursement requests, an anonymized class list, and sample arbitration agreements signed by portions of the Class; and an informal exchange of the Parties' positions on the merits of Plaintiff's unpaid wage and reimbursement theories that included a substantive discussion of case law as well as the risks each Party faced should the Action not settle. The Parties reached a settlement only after weeks of deliberation, meetings with their clients, and evaluation of the claims and attendant risks. (Buchsbaum Decl., ¶12) These deliberations were at arm's length.

### 2.    The Strength of the Case, and the Risk, Expense, Complexity, and Likely Duration of Further Litigation All Favor Approval.

This factor supports approval because the Settlement confers substantial benefits to Class Members, particularly in light of the complex theories of liability asserted and the uncertainties of further litigation. *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.").

Plaintiff asserts two principal claims. First, Plaintiff alleges Kering misclassified her and other Brand Ambassadors as outside salespersons during the COVID-19 pandemic. Plaintiff alleges that, in response to pandemic-era restrictions, Brand Ambassadors performed most of their work from home, where Zoom meetings and telephone calls were

11

ACTIVE 708735086v2

the primary mode of sales. Accordingly, Plaintiff claims the outside salesperson no longer applied as Brand Ambassadors were no longer working more than half of their working time in the field selling, as required by California's outside salesperson exemption. This purported misclassification resulted in unpaid minimum wages and overtime. And as a result of the allege failure to pay these wages, Plaintiff also asserts two derivative claims for inaccurate wage statements and waiting time penalties.

Defendant adamantly denies that Plaintiff's misclassification theory has merit. To start, Defendant alleges that Plaintiff's misclassification theory is inherently self-limiting. Indeed, Defendant contends that as soon as COVID-19 restrictions eased in the summer of 2020, Plaintiff and all other Brand Ambassadors returned to the field to sell. Any class claims premised on unpaid wages cannot extend through present and end, at best, July 2020. And even if Plaintiff and other Brand Ambassadors were not out on the field selling from the start of the pandemic through summer 2020, "[a]n exempt employee will not lose the exemption by performing work of a normally nonexempt nature because of the existence of an emergency." 29 C.F.R. § 541.706. Thus, when "emergencies arise that threaten the safety of employees, a cessation of operations or serious damage to the employer's property, any work performed in an effort to prevent such results is considered exempt work." *Id.; see also Crayton v. Sailormen, Inc.*, 2023 U.S. Dist. LEXIS 127143 (S.D. Ga. July 24, 2023). Thus, Defendant alleges that even if Plaintiff was not out on the field selling, this was the result of a government emergency, not some requirement imposed by her employer. Although no California court has ruled on the applicability of the FLSA's emergency regulations in this context, Defendant is confident Plaintiff has no viable misclassification claim.

Second, Plaintiff alleges Kering failed to reimburse her and other Brand Ambassadors for work-related business expenses. Plaintiff alleges that Kering reimbursed Brand Ambassadors at one-half IRS standard mileage rates which did not sufficiently cover the actual costs of business-related driving expenses incurred. Plaintiff also alleges that Brand Ambassadors were required to use their home internet to perform their work duties.

JOINT MOTION FOR PRELIMINARY APPROVAL

Despite this, Kering purportedly did not reimburse Brand Ambassadors for the use of their home internet for work-related purposes.

Defendant, again, adamantly denies that Plaintiff's reimbursement theories have merit. Defendant contends Plaintiff ignores that her and all other Brand Ambassadors received a flat $500 stipend *in addition* to one-half IRS standard mileage rates. Taking this $500 stipend into account, Defendant alleges that Brand Ambassadors received full (i.e., 100%) IRS standard mileage rates and additional monies to cover the costs of all business-related driving expenses. Defendant also alleges that Plaintiff and other Brand Ambassadors received company-provided cellphones and iPads with internet connectivity that could be used as a hotspot. Accordingly, not only was Plaintiff's purported home internet use not necessary, but also incurred without Defendant's knowledge. Defendant therefore believes Plaintiff's reimbursement claim will fail on the merits.

Aside from the overall merits, Defendants contend that proof of the elements of each claim would devolve into fact-intensive and individualized proof sets, and thus the claims could not be certified for class treatment. Initially, 14 out of the 29 Class Members signed valid and enforceable arbitration agreements. It is well-established that "plaintiffs who are not subject to an arbitration agreement cannot represent a class of persons who are." *Pardo v. Papa, Inc.*, 2024 U.S. Dist. LEXIS 234921, at *6 (N.D. Cal. Dec. 31, 2024); *Campanelli v. Image First Healthcare Laundry Specialists, Inc*., 2018 U.S. Dist. LEXIS 215287, at *7-8 (N.D. Cal. Dec. 21, 2018) ("Though plaintiff is not subject to an arbitration agreement, he seeks to represent a Rule 23 class that includes drivers who are subject to arbitration agreements. The Ninth Circuit has foreclosed the viability of that proposition."). Thus, Defendant contends, absent settlement, that the Class is not capable of certification on adequacy and numerosity grounds.

In addition, Defendant contends Plaintiff's unpaid wage and reimbursement claims face obstacles to certification. Indeed, whether Plaintiff or Brand Ambassadors were misclassified under Plaintiff's theory depends on an assessment of, for example, when each Class Member returned to the field to sell once COVID restrictions eased; how much they

JOINT MOTION FOR PRELIMINARY APPROVAL

were working in any one week; whether they were working more than fifty percent of the time out in the field; what communications were given by Defendant in this regard; and whether any mechanisms were in place to enforce these expectations. Similarly, Defendant contends Plaintiff's insufficiency-of-reimbursement theory requires multiple individualized inquiries including, but not limited to, ascertaining the amount of travel each Class Member completed every month; the difference between the costs incurred and the reimbursements received from Kering that included ½ IRS standard mileage reimbursements and a flat $500 stipend; the reasonableness of the reimbursement sought, including factors such as the type of car driven, brand of gasoline purchased, and the amount of alleged wear and tear suffered; and the extent to which Brand Ambassadors did or did not seek reimbursement. In this way, Defendant maintains that it has strong arguments that Plaintiff's claims will not be certified.

The Parties therefore agree that, given the complexity of the theories at issues, absent settlement, each side would engage in extensive discovery culminating in expensive motion practice (e.g., class certification and motion for summary judgment)—none of which is commensurate with the rather modest size of the Class that consists of approximately 30 members.

### 3.    The Amount Offered in Settlement Favors Approval.

"An important consideration in judging the reasonableness of a settlement is the strength of the plaintiff's case on the merits balanced against the amount offered in the settlement." *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004). At the same time, "the Court need not reach an ultimate conclusion about the merits of the dispute now, 'for it is the very uncertainty of outcome in litigation and avoidance of wastefulness and expensive litigation that induce consensual settlements.'" *Bellinghausen*, 306 F.R.D. at 255 (*citing Officers for Justice v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)). "Ultimately, the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Officers for Justice*, 688 F.2d at 625 (citation omitted).

Here, particularly in light of the uncertainties attendant to this litigation, the amount

14

of the Settlement is not insignificant considering the relatively small size of the Class. The Settlement will provide the most highly compensated Class Members (i.e., those working for the entire Class Period) with an individual recovery of approximately **$835**. The average recovery exceeds **$450**. Given the uncertainties surrounding class certification and the unsettled nature of issues impacting liability, this is an excellent result for the Class.

Moreover, though Class Counsel's request for fees and costs, and Plaintiff's request for a service award, are not the subject of this motion, it bears noting that these amounts are capped by the Agreement and any amounts not awarded will not revert to Defendant, but to the Class. (Buchsbaum Decl., Ex. 1, § I.7.) Agreements like this, which calculate a proposed fee award as a percentage of the recovery, have been endorsed by the Ninth Circuit. *See Florida v. Dunne*, 915 F.2d 542, 545 (9th Cir. 1990) (noting support for "percentage-of-the-fund approach in common fund cases . . . .").

### 4. The Extent of Discovery and the Stage of Proceedings Favors Approval.

This Settlement comes early in the litigation. Still, the Parties proactively worked up the case through an informal exchange of information. (*See, e.g.*, Buchsbaum Decl., Ex. 1, § II (detailing materials provided to Plaintiff's counsel).) Because these are items and information that Plaintiff would normally request and receive through formal discovery, Plaintiff believes she had all the information necessary to analyze the potential damages at issue in the case as well as the risks she faced both in certifying the class and at dispositive motion. (Buchsbaum Decl., ¶11) Thus, "the [P]arties have sufficient information to make an informed decision about settlement." *Linner v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998). This early resolution, made at a time when the Parties have enough information to make an informed appraisal of the case but before the incurring of significant expense, strongly benefits the Class and favors approval.

### 5. The Experience and Views of Counsel Favor Settlement.

Counsel's support is accorded "great weight" because counsel have the greatest familiarity with the facts of the litigation, and thus "are better positioned than courts to

15

ACTIVE 708735086v2

produce a settlement that fairly reflects each party's expected outcome in the litigation." *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995); *see also Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.").

Class Counsel has extensive experience in class action litigation, and especially wage and hour class actions. (Buchsbaum Decl., ¶¶1-8) Based on this experience, Class Counsel is well qualified to conduct the proposed litigation and to assess its settlement value. Plaintiff's counsel believes the proposed Settlement is fair and adequate to Class Members. Buchsbaum Decl., ¶13. This factor, too, weighs in favor of approval. *Ontiveros v. Zamora*, 303 F.R.D. 356, 371 (E.D. Cal. 2014) ("The court gives considerable weight to class counsel's opinions regarding the settlement due to counsel's experience and familiarity with the litigation. Counsel's assertion that the settlement is fair, adequate and reasonable is a factor supporting the court's final approval of the agreement.").

### 6.    The Class Reaction Is Expected to Favor Settlement.

The Settlement permits Class Members to opt out or otherwise raise objections before the final approval hearing. The Parties believe that the Agreement is fair and adequate, and that no objections will be raised. If any are raised, they will be addressed at the final approval hearing.

## V.    THE PROPOSED CLASS NOTICE SHOULD BE APPROVED.

Rule 23(e)(1) requires that Notice must be provided "in a reasonable manner." Courts have interpreted this provision to find that notice must be reasonably certain to inform those affected and is reasonably calculated to reach class members. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174 (1974). Due process is also satisfied when a descriptive notice is sent by first-class mail to those affected by the settlement. *Phillips Petroleum Co. v. Schutts*, 472 U.S. 797, 812 (1985).

The proposed Notice satisfies these requirements. (Buchsbaum Decl., Ex. 1, Ex. A.) The Parties have agreed to use ILYM Group, Inc. to send the Notice and administer the

16

ACTIVE 708735086v2

Settlement. (*Id.*) Notice will be sent by first-class mail to all Class Members. (*Id.*) The Notice also advises members of the material terms and provisions of the Settlement, the procedure, and deadlines for participating in the Settlement, their rights with respect to the Settlement, and instructions for opting out or objecting to it. (*Id.*) The Notice will also disclose the fees and costs sought by counsel and proposed incentive awards. (*Id.*) The proposed Class Notice should be approved.

## VI. A FINAL APPROVAL HEARING SHOULD BE SET.

The Parties request that the Court set a final approval hearing, at a minimum, 100 days after the Order granting preliminary approval. This timeframe will provide the Parties and the Settlement Administrator sufficient time to complete settlement administration, including mailing of the Notices to Class Members and preparation of final approval papers.

## VII. CONCLUSION

For all these reasons, the Parties request that the Court grant preliminary approval of the Settlement and grant conditional certification of the proposed Class for settlement purposes only; appoint Brent Buchsbaum as Class Counsel; appoint Plaintiff as Class Representatives; approve the form of the Notice and Opt-Out Form and authorize the Parties to mail the same; and set a final approval hearing for the earliest available date of the Court's choosing not sooner than 100 days from preliminary approval.

Respectfully submitted,

Dated: March 21, 2025          Law Offices of Buchsbaum & Haag LLP


By: /s/Brent S. Buchsbaum
Brent S. Buchsbaum
Attorney for Plaintiff Stacey Campbell

Dated: March 21, 2025          Greenberg Traurig, LLP


By: /s/Ashley Farrell Pickett
Ashley Farrell Pickett
Attorneys for Defendant
Kering Eyewear USA, Inc.

17

JOINT MOTION FOR PRELIMINARY APPROVAL

ACTIVE 708735086v2

# EXHIBIT "A"

Brent S. Buchsbaum (SBN CA 211279)
brent@buchsbaumshaag.com
Laurel N. Haag (SBN CA 211279)
laurel@buchsbaumhaag.com
**LAW OFFICES OF BUCHSBAUM & HAAG, LLP**
100 Oceangate, Suite 1200
Long Beach, California 90802
Telephone: 562.733.2498

Attorneys for Plaintiff Stacey Campbell

Ashley Farrell Pickett (SBN 271825)
ashley.farrellpickett@gtlaw.com
Oscar E. Peralta (SBN 335450)
oscar.peralta@gtlaw.com
**GREENBERG TRAURIG, LLP**
1840 Century Park East, Suite 1900
Los Angeles, California 90067
Telephone: 310.586.7700

Attorneys for Defendant Kering Eyewear USA, Inc.
Kering Eyewear USA, Inc.

### UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STACEY CAMPBELL, individually, and as a representative of other aggrieved employees, | Case No. 2:24-cv-10398 MCS-PD |
| Plaintiff, | **JOINT STIPULATION AND SETTLEMENT OF CLASS AND PAGA ACTION** |
| v. | |
| KERING EYEWEAR USA, INC., a Corporation, and DOES 1 through 250, inclusive, | |
| Defendants. | |

1

JOINT STIPULATION AND SETTLEMENT OF CLASS AND PAGA ACTION

This Joint Stipulation and Settlement of Class and PAGA Action is made by and between Plaintiff Stacey Campbell ("Named Plaintiff"), on the one hand, and Defendant Kering Eyewear USA, Inc. ("Defendant"), on the other hand. Named Plaintiff and Defendant are collectively referred to as "Parties," or individually as "Party."

## I.  DEFINITIONS

1.      "Action" means, and refers to, the case titled *Stacey Campbell v. Kering Eyewear USA, Inc.*, that is pending in the United States District Court for the Central District of California, Case No. 2:24-cv-10398-MCS-PD, which also includes the notice letter submitted by Named Plaintiff to the Labor and Workforce Development Agency ("LWDA") in the case number LWDA-CM-1025269-24 ("PAGA Notice").

2.      "Agreement," "Settlement," or "Stipulation" mean, and refer to, this Joint Stipulation and Settlement of Class and PAGA Action.

3.      "Aggrieved Employee(s)" means, and refers to, all current and former Brand Ambassadors of Kering Eyewear USA, Inc. employed in California during the PAGA Period.

4.      "Attorneys' Fees and Cost Award" means, and refers to, the amount to be requested of the Court to be paid to Class Counsel. As set forth, *infra*, Class Counsel shall request an award of attorneys' fees of Six Thousand Two Hundred and Fifty Dollars and Zero Cents ($6,250.00) which is Twenty-Five Percent (25%) of the Gross Fund Value and a cost award of up to Two Thousand Dollars and Zero Cents ($2,000.00).

5.      "Class" and "Class Member" means, and refers to, a member of the class conditionally certified for settlement purposes only that consists of all current and former Brand Ambassadors of Kering Eyewear USA, Inc. employed in California during the Class Period.

6.      "Class Counsel" means, and refers to, Brent Buchsbaum of the Law Offices of Buchsbaum & Haag, LLP.

7.      "Class and PAGA Member Data" means, and refers to, an electronic data file that identifies for each Class Member and Aggrieved Employee his/her full name, last-

2

known address, last known telephone number, Social Security number, the number of Workweeks worked during the Class Period and, if applicable, the number PAGA Pay Periods worked during the PAGA Period. The Settlement Administrator will keep the Class and PAGA Member Data confidential and shall use it only for the purposes described herein, take adequate safeguards to protect confidential or private information, and return to Defendant or certify to Defendant the destruction of the information upon completion of the Settlement Administration process. For avoidance of doubt, neither Class Counsel nor Named Plaintiff shall be permitted to review or receive a copy of the Class and PAGA Member Data.

8.     "Class Period" means, and refers to, the period between February 9, 2020, and the date of Preliminary Approval.

9.     "Court" means, and refers to, the United States District Court for the Central District of California and specifically the courtroom in which Case No. 2:24-cv-10398 MCS-PD is pending, or any other court and/or courtroom holding jurisdiction.

10.     "Defendant" means, and refers to, Kering Eyewear USA, Inc.

11.     "Defendant's Counsel" or "Defense Counsel" means, and refers to, Ashley Farrell Pickett and Oscar E. Peralta of Greenberg Traurig, LLP.

12.     "Effective Date" means, and refers to, the date the Settlement shall become effective which will be the later of the following: (a) the 31st day (unless the last such date is a weekend or holiday, in which case the next business day shall be used) after the Court enters an order granting Final Approval of this Settlement and entering of judgment in the Action, provided that no timely appeal is taken of the order of final approval and the entering of judgment in the Action; or (b) if any timely appeals are filed, the date of the resolution and issuance of a mandate (or withdrawal) of any such appeal in a way that does not alter the terms of the Settlement.

13.     "Excluded Class Members" means, and refers to, all Class Members who timely and validly submit a written request to be excluded from the Class on or before the Objection/Exclusion Deadline.

Docusign Envelope ID: 545EDC4B-1DAE-4DD4-85D7-D4C187A7356C

14.    "Final Approval," "Final Approval Order," or "Final Judgment" means, and refers to, the Court's order granting final approval of the Settlement and entering judgment.

15.    "Gross Fund Value" means, and refers to, the maximum non-reversionary amount that Defendant will be required to pay in connection with this Settlement. The Gross Fund Value consists of the Attorneys' Fees and Costs Award, the Service Award, the Settlement Administration Costs, the PAGA Allocation and the Net Fund Value. The Gross Fund Value is equal to the total gross sum of Twenty-Five Thousand Dollars and Zero Cents ($25,000.00). Defendant will have no obligation to pay any amount in connection with this Settlement apart from the Gross Fund Value and Defendant's employers' portion of payroll taxes due on the Individual Settlement Payments. There will be no reversion.

16.    "Individual Settlement Payment(s)" means, and refers to, the amount to be paid to each Participating Class Member from the Net Fund Value.

17.    "Named Plaintiff" means, and refers to, Stacey Campbell.

18.    "Net Fund Value" or "NFV" means, and refers to, the funds available to be distributed to Participating Class Members from the Gross Fund Value after the payment of any Attorneys' Fees and Cost Award, Service Award, Settlement Administration Costs, and PAGA Allocation.

19.    "Notice" or "Class Notice" means, and refers to, the Notice of Class Action and PAGA Settlement, in the form that the Court approves and directs to be sent by regular mail to all Class Members. The Class Notice is attached hereto as **Exhibit A**.

20.    "Objection/Exclusion Deadline" means, and refers, to the date no later than sixty (60) days after the date the Class Notices are mailed (judged by the postmark date) to Class Members by the Settlement Administrator, on or before which a Class Member, may (1) validly submit a Notice of Objection, (2) submit a Request for Exclusion, or (3) challenge with documentary evidence his or her total Workweeks.

21.    "Operative Complaint" means, and refers to, the Third Amended Complaint

4

ACTIVE 706634904v1

filed by Named Plaintiff on December 16, 2024, in the Action and which is inclusive of the allegations, theories, and claims asserted in her prior pleadings including the Complaint, First Amended Complaint, and Second Amended Complaint.

22.    "PAGA Allocation" means, and refers, to the total sum of One Thousand and Five Hundred Dollars and Zero Cents ($1,500.00) that will be paid from the Gross Fund Value and which constitutes penalties pursuant to PAGA, that which will be distributed as follows: 75% (which totals $1,125.00) shall be paid to the LWDA and the remaining 25% (which totals $375.00) shall be paid to the Aggrieved Employees on a proportionate basis based on the number of PAGA Pay Periods each worked during the PAGA Period ("Individual PAGA Payment(s)").

23.    "PAGA Period" means, and refers to, the period between June 8, 2023, and the date of Preliminary Approval.

24.    "PAGA Pay Periods" means, and refers to, Defendant's two-week payroll cycle in which an Aggrieved Employee performed work for Defendant as determined by that Aggrieved Employee's hire and termination date (if any).

25.    "Participating Class Member" means, and refers to, all Class Members who are not Excluded Class Members.

26.    "Preliminary Approval Order" and "Preliminary Approval" mean, and refers to, the order issued by the Court preliminarily approving the terms of the Settlement.

27.    "Qualified Settlement Fund" means, and refers, to the fund to be established by the Settlement Administrator pursuant to Internal Revenue Code Section 1.468B-1.

28.    "Released Class Claims" is defined as follows: All Participating Class Members release Defendant and the Released Parties, for the duration of the Class Period, from all claims pled in the Operative Complaint and PAGA Notice and any claims that were, or reasonably could have been or still could be, pled based on facts alleged, or in any way related to the facts contained, in the Operative Complaint and PAGA Notice, including all claims for failure to pay for all hours worked, unpaid wages (including minimum wage, straight time, overtime and double time), failure to pay premium wages at the correct

regular rate, failure to pay final wages, failure to provide accurate wage statements, failure to reimburse business expenses, and unlawful business practices under the California Labor Code and/or the California Business and Professions Code, and any other claims for restitution or equitable relief, statutory penalties available for any of the foregoing, and attorneys' fees and costs.

29.    "Released PAGA Claims" is defined as follows: All Aggrieved Employees release Defendant and the Released Parties, for the duration of the PAGA Period, from all civil penalties recoverable under California's Private Attorneys General Act ("PAGA"), from all claims pled in the Operative Complaint and the PAGA Notice, and any claims that were, or reasonably could have been or still could be, pled based on facts alleged, or in any way related to the facts contained, in the Operative Complaint and PAGA Notice, including, all claims for failure to pay for all hours worked, unpaid wages (including minimum wage, straight time, overtime and double time), meal period violations (including meal premiums), rest break violations (including rest premiums), failure to pay premium wages at the correct regular rate, failure to pay final wages, failure to provide accurate wage statements, failure to reimburse business expenses, failure to comply with requirements regulating hours and days of work, failure to maintain payroll and timekeeping records, and attorneys' fees and costs.

30.    "Released Parties" means, and refers to, Kering Eyewear USA, Inc., and all its current, former and future officers, directors, managers, employees, consultants, partners, shareholders, agents, clients, parents, successors, assigns, accountants, insurers, or legal representatives.

31.     "Service Award" means, and refers to, the amount that the Court authorizes to be paid to Named Plaintiff over and above her Individual Settlement Payment, in recognition of Named Plaintiff's efforts in assisting with the prosecution of the Action on behalf of the Class Members.

32.     "Settlement Administrator" means, and refers to, ILYM Group, Inc.

33.     "Settlement Administration Costs" means, and refers to, the amount that will

be paid to the Settlement Administrator, and includes all costs incurred in administering the Settlement, which will be paid from the Gross Fund Value. The Parties anticipate Settlement Administration Costs to total and not exceed $750.00.

34. "Settlement Member(s)" means, and refers to, all Participating Class Members, all Aggrieved Employees, and Named Plaintiff.

35. "Workweek" is any calendar week during the Class Period in which a Class Member was employed by and performed work for Defendant as determined by that Class Member's hire and termination date (if any).

## II. RECITALS

WHEREAS, the Parties have conducted significant investigation of the facts and law during the prosecution of this Action. This included multiple meet and confer conferences between the Parties regarding deficiencies Defendant identified in Plaintiff's pleadings; an exchange of informal discovery between the Parties that included, among other things, a production of Plaintiff's earning statements, expense reimbursement requests, an anonymized class list, and sample arbitration agreements signed by the Class; and an informal exchange of the Parties' positions on the merits of Plaintiff's unpaid wage and reimbursement theories, and the risks each Party faced should the Action not settle;

WHEREAS, Named Plaintiff and Class Counsel recognize the expense and length of continued proceedings necessary to litigate their claims through trial and through any possible appeals. Named Plaintiff has also considered the uncertainty and risk of the outcome of further litigation, and the difficulties and delays inherent in such litigation. Named Plaintiff and Class Counsel are also aware of the burdens of proof necessary to establish liability for the claims asserted in the Action, both generally and in response to Defendant's defenses thereto (most of which have been shared during the Parties' settlement discussions). Named Plaintiff and Class Counsel have also considered Defendant's agreement to enter into a settlement that confers substantial relief upon the Class Members. Based on the foregoing, Named Plaintiff and Class Counsel have determined that the Settlement set forth in this Agreement is a fair, adequate and a

Docusign Envelope ID: 545EDC4B-1DA5-4DD4-85D7-D4C187A7356C

reasonable settlement, and is in the best interests of the Class Members;

WHEREAS, Defendant does not admit any wrongdoing and contends that it fully complied with the law at all times in all respects. Regardless of whether the Settlement is finally approved, neither this Settlement, nor any terms, document, statement, proceeding or conduct related to settlement, nor any reports or accounts thereof, shall in any event be (a) construed as, offered or admitted in evidence as, received as, or deemed to be evidence for any purpose, including, but not limited to, evidence of a presumption, concession, indication, or admission by Defendant of any fault, wrongdoing, liability and/or unlawful activity whatsoever or any effort to certify a class or collective action; or (b) disclosed, referred to, or offered or received in evidence, in any further proceeding in this action, or any other civil, criminal or administrative action or proceeding, except for purposes of settling this Action or enforcing this Settlement, or as a defense to any claims released by the Settlement;

WHEREAS, Named Plaintiff has claimed and continues to claim that the Released Class Claims and PAGA Released Claims have merit and give rise to liability on the part of Defendant. This Agreement is a compromise of disputed claims. Nothing contained in this Agreement and no documents referred to herein and no action taken to carry out this Agreement may be construed or used as an admission by or against Named Plaintiff or Class Counsel as to the merits or lack thereof of the Action.

**NOW, THEREFORE, IT IS HEREBY STIPULATED**, that the Action is hereby compromised and settled pursuant to the terms and conditions set forth in this Agreement, subject to the recitals set forth above, which by this reference become an integral part of this Agreement, and subject to the following definitions:

### III.    CLASS CERTIFICATION FOR SETTLEMENT PURPOSES ONLY

At or about the time that Named Plaintiff files her motion for preliminary approval of this Settlement, Named Plaintiff shall request certification of the Class for settlement purposes only. The certification of the Class – for settlement purposes only – shall not constitute, in this or any other proceeding, an admission of any kind by Defendant,

Docusign Envelope ID: 545EDC4B-10A5-4DD4-85D7-D4C187A7356C

including without limitation, that certification of a class or collective action for trial purposes is appropriate or proper, that Named Plaintiff could establish any of the requisite elements for class or collective treatment of any of the claims in the Action, or that the PAGA claims asserted could proceed on a representative basis. In the event that the Settlement is not finally approved, or the Settlement is otherwise terminated or rendered null and void, the certification of the Class shall be automatically vacated and shall not constitute evidence or a binding determination that the requirements for certification of a class or collective action for trial purposes in this Action or in any other actions are satisfied. In such circumstances, Defendant expressly reserves all rights to challenge the Class certification for any purpose other than settlement purposes in this Action or in any other action on all available grounds as if no class had been certified for settlement purposes in the Action, and no reference to the prior certification of this class, or any documents related thereto, shall be made available for any purpose. Additionally, the Parties stipulate that to further the certification for settlement purposes only, and for no other purpose or effect, and which shall not constitute evidence or a binding admission, Named Plaintiff is typical of other Class Members and can represent the Class.

## IV.   **SETTLEMENT TERMS**

1.   <u>Release as to All Participating Class Members</u>. Upon the Effective Date and upon Defendant fully funding the Settlement, the Participating Class Members, including Named Plaintiff, release the Released Parties for the Released Class Claims for the Class Period.

2.   <u>Release as to All Aggrieved Employees</u>. Upon the Effective Date and upon Defendant fully funding the Settlement, the Aggrieved Employees, including Named Plaintiff, release the Released Parties for the PAGA Released Claims for the PAGA Period.

3.   <u>Named Plaintiff's Release</u>. Plaintiff and her respective former and present representatives, agents, attorneys, heirs, administrators, successors, and assigns, release and discharge Defendant and the Released Parties from all claims, transactions, or

Docusign Envelope ID: 545EDC4B-10AE-4DD4-85D7-D4C187A7356C

occurrences, including, but not limited to: (a) all claims that were, or reasonably could have been or still could be, alleged, based on or in any way related to the facts contained, in the Operative Complaint and PAGA Notice; and (b) all PAGA claims that were, or reasonably could have been or still could be, alleged based on or in any way related to the facts contained in the Operative Complaint and PAGA Notice; and (c) any and all known or unknown liabilities, claims, demands for damages, costs, attorneys' fees, indemnification, contribution, or any other thing for which Plaintiff has or may have, including known or unknown causes of action, claims, or demands for damages, costs, attorneys' fees, indemnification, or contribution, whether certain or speculative, class or individualized, which may have come into existence at any time prior to the time of execution of this Agreement, or that may be brought in the future in connection with any acts or omissions that have arisen at any time prior to execution of this Agreement, including, but not limited to, any and all claims that Plaintiff has actually alleged or could have alleged to date, any and all claims arising out of Plaintiff's work for Defendant and/or employment status, any claims related to FMLA or CFRA leave, that Plaintiffs' privacy rights have been violated in any way, any and all claims for wage and hour violations, any and all claims for tortious conduct resulting in personal injuries or intentional infliction of emotional distress, any and all claims for violations under the California Business and Professions Code Section 17200, and any and all claims for or related to harassment, discrimination or retaliation on the basis of race, color, national origin, religion, gender, age, sexual orientation, ancestry, medical condition, marital status, pregnancy, physical or mental disability, associational disability, or other protected class, discharge in violation of any state and federal law, regulations, or constitutions, including without limitation, the Age Discrimination in Employment Act ("ADEA") and its amendment, the Older Workers Benefit Protection Act ("OWBPA"), the California Fair Employment and Housing Act ("FEHA"), the Americans with Disabilities Act, Title VII of the Civil Rights Act of 1964, as amended, Secs. 503 and 504 of the Rehabilitation Act of 1973, as amended, The Fair Labor Standards Act, as amended, the National Labor Relations Act,

JOINT STIPULATION AND SETTLEMENT OF CLASS AND PAGA ACTION
ACTIVE 706634904v1

as amended, the Labor – Management Relations Act, as amended, the Worker Adjustment and Retraining Notification Act of 1988, as amended, the Pregnancy Discrimination Act, the Employee Retirement Income Security Act of 1974, as amended, the Family Medical Leave Act of 1993, as amended, the California Family Rights Act, as amended, and the California Labor Code, including divisible individual claims under the Private Attorneys General Act, Labor Code § 2698, et seq, and the California Wage Orders .

4.    <u>Named Plaintiff's Waiver of Rights Under California Civil Code Section 1542</u>. For purposes of Named Plaintiff's Release only, Plaintiff expressly waives and relinquishes the provisions, rights, and benefits, if any, of section 1542 of the California Civil Code, which reads:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

5.    <u>Claims Excluded from Named Plaintiff's Release</u>. Named Plaintiff's Release excludes any claims for (i) wrongful termination in violation of public policy and violation of Labor Code section 1102.5, and (ii) constructive termination in violation of public policy. For the avoidance of doubt, Named Plaintiff's claims for (i) wrongful termination in violation of public policy and violation of Labor Code section 1102.5, and (ii) constructive termination in violation of public policy, and which are pled and currently at-issue in the Action will survive and are not impacted by this Settlement or the general release Plaintiff provides herein.

6.    <u>Service Award</u>. Subject to Court approval, Named Plaintiff shall be paid a Service Award of up to One Thousand Five Hundred Dollars and Zero Cents ($1,500.00), or such other distribution or lower amount as the Court may order. The Service Award shall be paid from the Gross Fund Value and shall not increase the Gross Fund Value. The

Service Award shall be paid to Named Plaintiff by the Settlement Administrator no later than ten (10) business days after Defendant delivers the Gross Fund Value to the Settlement Administrator for deposit into the Qualified Settlement Fund. The Parties agree that a decision by the Court to award Named Plaintiff an amount less than the amount stated above shall not be a basis for Named Plaintiff to void this Stipulation. The Settlement Administrator shall issue Named Plaintiff an IRS Form 1099 for the Service Award. Any amount awarded for service payments to Named Plaintiff less than the requested amount will result in the non-awarded funds to be awarded to Participating Class Members on a proportionate basis. Named Plaintiff shall be solely and legally responsible to pay any and all applicable taxes on this payment. The Service Award shall be paid in addition to her Individual Settlement Payment.

7.    <u>Tax Liability</u>. Defendant makes no representations as to the tax treatment or legal effect of the payments called for hereunder, and Named Plaintiff and Settlement Members are not relying on any statement or representation by Defendant in this regard. Named Plaintiff and Settlement Members understand and agree that except for Defendant's payment of the employer's portion of any payroll taxes, they will be solely responsible for the payment of any and all taxes and penalties assessed on the payments described herein.

8.    <u>Creation of the Qualified Settlement Fund and Administration of the Settlement</u>. Within fourteen (14) days of the Effective Date, Defendant shall deliver the Gross Fund Value into the Qualified Settlement Fund created by the Settlement Administrator. Defendant shall also simultaneously deliver to the Settlement Administrator, Defendant's (Employer) share of payroll taxes, including but not limited to, FICA, FUTA and SDI contributions.

9.    <u>Attorneys' Fees and Cost Award</u>. Defendant agrees not to oppose or impede any application or motion by Class Counsel for their attorneys' fees provided such request does not exceed Six Thousand Two Hundred and Fifty Dollars and Zero Cents ($6,250.00) which is Twenty-Five Percent (25%) of the Gross Fund Value. Defendant further agrees

not to oppose any application or motion by Class Counsel for the reimbursement of any actual costs associated with Class Counsel's prosecution of this matter which are estimated to equal Two Thousand Dollars and Zero Cents ($2,000.00). The Parties agree that a decision by the Court to award an Attorneys' Fees and Cost Award in an amount less than the amount stated in this Settlement shall not be a basis for Named Plaintiff to void this Stipulation. Any amount awarded for attorneys' fees and costs less than the allocated amounts will result in the non-awarded amounts to be awarded to Participating Class Members on a proportionate basis. Class Counsel shall be paid any Court-approved fees and costs no later than ten (10) business days after Defendant delivers the required funds to the Settlement Administrator for deposit into the Qualified Settlement Fund. Class Counsel shall be solely and legally responsible to pay all applicable taxes on the payment made to Class Counsel. Forms 1099 shall be provided to Class Counsel for the payments made, and Class Counsel shall provide, before the Effective Date, completed Forms W-9.

10.    Settlement Administrator. The Settlement Administrator shall be paid for the costs of administration of the Settlement out of the Gross Fund Value as deposited in the Qualified Settlement Fund. Any amount awarded for costs of administration to the Settlement Administrator less than Seven Hundred Dollars and Zero Cents ($700.00) will result in the non-awarded amount to be awarded to Participating Class Members on a proportionate basis.

11.    Settlement Administration/Management. The Individual Settlement Payments and Individual PAGA Payments shall be managed and administered as follows:

a.    The Parties each represent they do not have any financial interest in the Settlement Administrator or otherwise have a relationship with the Settlement Administrator that could create a conflict of interest.

b.    Defendant shall provide the Settlement Administrator the Class and PAGA Member Data within fourteen (14) days of the Preliminary Approval Date.

c.    Within fourteen (14) days of receipt of the Class and PAGA Member Data,

13

JOINT STIPULATION AND SETTLEMENT OF CLASS AND PAGA ACTION

the Settlement Administrator shall mail the Class Notice in the form attached hereto as **Exhibit A**.

d. The Settlement Administrator shall provide Defendant's Counsel and Class Counsel a weekly report showing the number of Class Members who have objected to or requested exclusion from the Settlement (if any).

e. The Settlement Administrator shall be responsible for: printing and mailing the Notices as directed by the Court; receiving and reporting the objections/requests for exclusion and challenges to the Individual Settlement Payments submitted by Class Members; mailing Individual Settlement Payments to Participating Class Members; mailing Individual PAGA Payments to Aggrieved Employees; the payment to the LWDA; and other tasks as the Parties mutually agree or the Court orders the Settlement Administrator to perform. The Settlement Administrator shall keep Defendant, Defendant's Counsel and Class Counsel timely apprised of the performance of all Settlement Administrator responsibilities.

f. The Settlement Administrator shall be responsible for issuing to Named Plaintiff, Settlement Members, the LWDA, the Settlement Administrator, and Class Counsel any W-2, 1099, or other tax forms as may be required by law for all amounts paid pursuant to this Settlement, and for forwarding all payroll taxes and penalties to the appropriate government authorities.

g. The Settlement Administrator, on Defendant's behalf, shall have the authority and obligation to make payments, credits and disbursements, including payments and credits in the manner set forth herein to Settlement Members, calculated in accordance with the methodology set out in this Agreement and orders of the Court.

h. No person shall have any claim against Defendant or Defendant's Counsel, Named Plaintiff, Class Members, the Class, Class Counsel or the Settlement Administrator based on distributions and payments made in accordance with this Agreement.

i. The Settlement Administrator will provide to Defendant, as soon as

14

JOINT STIPULATION AND SETTLEMENT OF CLASS AND PAGA ACTION

practicable, but no later than thirty (30) days after Preliminary Approval is granted, a fully executed IRS W-9 form and any other information Defendant may require to issue payment.

12.    <u>Calculation and Administration of Individual Settlement Payments</u>. The Individual Settlement Payments will be calculated as follows:

a.    The Settlement Administrator will divide the Net Fund Value by all Workweeks worked by the Class to calculate the value of each Workweek.

b.    The Settlement Administrator will calculate each Class Members' Individual Settlement Payment by multiplying his or her total Workweeks times the value of each Workweek. Each Class Member's estimated Individual Settlement Payment will be indicated on the Notice.

c.    The Individual Settlement Payment estimates indicated on the Notice are subject to change, depending on factors including: (i) how many Class Members become Excluded Class Members (resulting in their Workweeks being removed from the final aggregate Workweek number, thereby increasing the value of each Workweek); (ii) any changes to the total Workweeks resulting from challenges to total Workweeks submitted by Class Members resulting in workweek adjustments; and (iii) any increases or reductions in the Net Fund Value which may result from, inter alia, changes to the actual amount of PAGA Allocation, and/or Settlement Administration Costs.

d.    Each Participating Class Member's Individual Settlement Payment will be allocated as follows: (a) 20% as wages; and (b) 80% as interest and penalties. The portion allocated to wages shall be reported on an IRS Form W-2 and the portions allocated to interest and penalties shall be reported on an IRS Form-1099 by the Settlement Administrator.

13.    <u>Calculation and Administration of the PAGA Allocation</u>. The Individual PAGA Payment will be calculated as follows:

a.    The Settlement Administrator shall pay $1,125.00 (75% of the PAGA Allocation) to the LWDA.

b.      The Settlement Administrator will divide $375.00 (25% of the total PAGA Allocation) by the amount of total PAGA Pay Periods worked by the Aggrieved Employees to obtain the value of each PAGA Pay Period.

c.      The Settlement Administrator will calculate each Aggrieved Employee's Individual PAGA Payment by multiplying his/her PAGA Pay Periods by the value of each PAGA Pay Period. Each Aggrieved Employee's Individual PAGA Payment will be indicated on the Notice.

d.      The PAGA Allocation is subject to Court approval and may change on this basis.

e.      Each Aggrieved Employees' Individual PAGA Payment will be allocated as 100% penalties and shall be reported on an IRS Form-1099 by the Settlement Administrator.

14.    <u>Notice to Class Members and Aggrieved Employees</u>. Notice of the Settlement shall be provided to all Class Members and Aggrieved Employees using the following procedures:

a.      Notice By First-Class Mail. Within fourteen (14) days after receipt of the Class and PAGA Member Data, the Settlement Administrator shall mail the Class Notice, which has been mutually approved by counsel for the Parties, to the Class Members via first-class regular U.S. Mail. Prior to mailing, the Settlement Administrator will perform a search based on the National Change of Address Database information to update and correct for any known or identifiable address changes. If a new address is obtained by a way of a returned Class Notice, then the Settlement Administrator shall promptly forward the original Class Notice to the updated address via first-class regular U.S. mail indicating on the original Class Notice the date of such re-mailing.

b.      No Requirement for a Claim Form. Class Members shall not be required to submit a Claim Form to receive an Individual Settlement Payment or Individual PAGA Payment.

c.      Objection/Exclusion Deadline. Class Members will have sixty (60) days

from the mailing of the Class Notice to submit an objection and/or request for exclusion from the Settlement, or challenge the Workweeks indicated on their Class Notice. Class Members to whom Class Notices are resent after having been returned undeliverable to the Administrator per the paragraph below shall have an additional fifteen (15) calendar days beyond the Objection/ Exclusion Deadline Date.

       d.    Procedure for Undeliverable Notices. Any Class Notices returned to the Settlement Administrator as non-delivered on or before the Objection/Exclusion Deadline Date shall be sent to the forwarding address affixed thereto within five (5) days. If no forwarding address is provided, then the Settlement Administrator shall promptly attempt to determine a correct address using a single skip-trace, computer or other search using the name and address of the individual involved and shall then perform a single re-mailing within five (5) days. In the event the procedures in this paragraph are followed and the intended recipient of a Notice still does not receive the Notice, the Class Member shall be bound by all terms of the Settlement and any Final Judgment entered by the Court if the Settlement is approved by the Court.

       e.    No later than fourteen (14) days prior to the Final Approval Hearing, the Settlement Administrator shall provide Defendant's Counsel: (i) the names and contact information of the Class Members objecting to or requesting exclusion from the Settlement; and (ii) the amounts owed to each Participating Class Member and Aggrieved Employees.

       15.    <u>Procedure for Objecting to or Requesting Exclusion from the Class Action Settlement or Challenging Total Workweeks</u>. The Class Members shall submit objections to the Settlement and/or request exclusion from the Settlement and/or submit a challenge to Workweeks reflected on their Class Notice using the following procedures:

       a.    Procedure For Objecting. The Class Notice shall provide that those Class Members who wish to object to the Settlement shall mail a written statement of objection ("Notice of Objection") to the Settlement Administrator, no later than the Objection/Exclusion Deadline Date. The postmark date of the mailing shall be deemed the

17

exclusive means for determining if a Notice of Objection is timely. The Notice of Objection must contain the Class Member's name, the last four digits of his/her social security number, dates of employment, current contact information, a statement providing the basis for the Class Member's objections, a statement advising if the objecting Class Member plans to address the Court at the Final Approval Hearing, and any legal briefs, papers or memoranda the objecting Class Member proposes to submit to the Court. Class Members regardless of whether they submit a written objection to the Settlement Administrator will have the right to appear at the Final Approval Hearing in order to have their objections heard by the Court. Class Counsel and Counsel for Defendant shall file any responses to any written objections submitted to the Court in accordance with this Agreement at least five (5) court days before the Fairness Approval Hearing.

   b.    Procedure For Requesting Exclusion. The Notice shall provide that Class Members who wish to exclude themselves from the Class must submit a written request to be excluded ("Request for Exclusion") from the Class on or before the Objection/Exclusion Deadline Date. A copy of the Notice of Objection is attached hereto as **Exhibit B**. Such Request for Exclusion: (1) must contain the name, address, telephone number and the last four digits of the Social Security number of the person requesting exclusion; (2) must be signed by the person requesting exclusion; (3) must be returned by mail to the Settlement Administrator at the specified address; (4) and must be postmarked on or before the Objection/Exclusion Deadline Date. The date of the postmark on the return mailing envelope shall be the exclusive means used to determine whether a request for exclusion has been timely submitted. Any Class Member who requests an exclusion from the Class will not be  bound by the Released Class Claims, have any right to object, appeal or comment thereon, or be entitled to an Individual Settlement Payment. Class Members who fail to submit valid and timely a Request for Exclusion on or before the Objection/Exclusion Deadline Date shall be Participating Class Members and shall be bound by all terms of the Settlement and any Final Judgment entered in this Action if the Settlement is approved by the Court. At no time shall any of

the Parties or their counsel seek to solicit or otherwise encourage members of the Settlement Class to submit a Request for Exclusion from the Settlement. Requests for Exclusions do not apply to Aggrieved Employees; Aggrieved Employees will be bound by the PAGA Released Claims irrespective of whether they make a Request for Exclusion. For the avoidance of doubt, no Aggrieved Employee may opt out of the Settlement with respect to the PAGA Released Claims.

c.    Procedure for Disputing Individual Settlement Payments: Each Class Member will have the opportunity, should he/she disagree with Defendant's records regarding his/her total Workweeks as presented in his/her Class Notice, to provide documentation to show contrary employment dates. To do so, Class Members must contact the Settlement Administrator, along with all applicable documentary evidence to support his/her dispute regarding his/her Workweeks prior to the Objection/Exclusion Deadline. Moreover, an individual can only dispute his/her number of total Workweeks if he/she does not exclude himself/herself from the Settlement. If there is a dispute, the Settlement Administrator will consult with the Parties to determine whether a workweek adjustment is warranted. Class Counsel and Defendant's Counsel shall meet and confer to reach an agreement regarding whether a workweek adjustment is warranted based on the documentary evidence submitted by the Class Member. If a workweek adjustment is warranted, the additional amount owed to said Class Member, if any, shall be paid as part of that Participating Class Member's Individual Settlement Payment and no adjustment will result in an increase to the Gross Fund Value. If the dispute cannot be resolved by the Parties, the workweeks shall be as stated in the Class and PAGA Member Data provided by Defendant. The Court may review any decision made by the Settlement Administrator regarding any disputes submitted by a Class Member regarding his/her Workweeks.

d.    No Solicitation of Settlement Objections. The Parties agree to use their best efforts to carry out the terms of this Settlement. At no time shall any of the Parties or their counsel seek to solicit or otherwise encourage Class Members to submit written objections to the Settlement or appeal from any Final Judgment.

ACTIVE 706634904v1

16.  Procedure for Payment of Individual Settlement Payments and Individual PAGA Payments.

a.  Individual Settlement Payments for Class Members and Individual PAGA Payments for Aggrieved Employees shall be paid exclusively from the Qualified Settlement Fund, pursuant to the settlement formulas set forth herein, and shall be mailed within ten (10) business days after Defendant delivers the required funds to the Settlement Administrator for deposit into the Qualified Settlement Fund.

b.  Any checks issued by the Settlement Administrator to Settlement Members shall be negotiable for one hundred and eighty (180) calendar days. Those funds represented by Settlement checks returned as undeliverable and those Settlement checks remaining uncashed for more than one hundred and eighty (180) days after issuance shall be distributed to the Controller of the State of California to be held pursuant to the Unclaimed Property Law, California Code of Civil Procedure Section 1500 et seq. for the benefits of those Settlement Members who did not cash their checks until such time they claim their property. The Parties agree that this disposition results in no "unpaid residue" under California Civil Procedure Code Section 384, as the entire Net Fund Value (NFV) and the PAGA Allocation attributable to the Aggrieved Employees will be paid out to Settlement Members, whether or not they all cash their settlement checks.

c.  Although Settlement Members who do not timely cash their Individual Settlement Payments or Individual PAGA Payments shall not immediately receive the monies from those checks, such persons shall nonetheless be Settlement Members and will be bound by all terms of the Settlement and any judgment entered in this Action if the Settlement is approved by the Court, including the release of the Released Class Claims and Released PAGA Claims.

17.  Certification by Settlement Administrator.  Upon completion of administration of the distributions, the Settlement Administrator shall provide written certification of such completion to the Court and counsel for all Parties.

18.  Final Approval Hearing and Entry of Final Judgment. Upon expiration of the

20

Objection/Exclusion Deadline Date, a Final Approval Hearing shall be conducted to determine final approval of the Settlement along with the amount properly payable for (i) the Attorneys' Fees and Cost Award, (ii) any Service Awards, and (iii) Settlement Administration Costs. The Final Approval Hearing shall not be held earlier than thirty (30) days from Objection/Exclusion Deadline Date. After entry of the Final Approval Order, the Court shall have continuing jurisdiction solely for purposes of addressing: (i) the interpretation and enforcement of the terms of the Settlement; (ii) settlement administration matters; and (iii) such post-final judgment matters as may be appropriate under court rules or as set forth in this Agreement.

19.    <u>Discharge of Obligations</u>. Defendant shall discharge its obligations to the Settlement Members through the remittance by the Settlement Administrator of the Individual Settlement Awards to the Participating Class Members and Individual PAGA Payments to the Aggrieved Employees, regardless of whether these awards are actually received and/or negotiated by Settlement Members. Once Defendant has complied with its obligations set forth in this Settlement, it will be deemed to have satisfied all terms and conditions under this Settlement Agreement and shall have no further obligations under the terms of the Agreement regardless of what occurs with respect to those sums.

20.    <u>Nullification of Settlement Agreement</u>. In the event: (i) the Court does not finally approve the Settlement as provided herein; or (ii) the Court does not enter a Final Approval Order as provided herein, which becomes final as a result of the occurrence of the Effective Date, this Settlement Agreement shall be null and void and any order or judgment entered by the Court in furtherance of this Settlement shall be treated as void from the beginning. In such a case, the Parties and any funds to be awarded under this Settlement shall be returned to their respective statuses as of the date and time immediately prior to the execution of this Agreement, and the Parties shall proceed in all respects as if this Agreement had not been executed. In the event an appeal is filed from the Court's Final Judgment, or any other appellate review is sought prior to the Effective Date, administration of the Settlement shall be stayed pending final resolution of the appeal or

other appellate review, as well as any fees incurred by the Settlement Administrator prior to it being notified of the filing of an appeal from the Court's Final Judgment, or any other appellate review.

21.    Notice to the LWDA. Class Counsel shall be responsible for timely providing all notices to the LWDA and providing Defendant's counsel confirmation of same, including submission of the Settlement to the LWDA contemporaneously with the filing of the motion for preliminary approval, under California Labor Code § 2699(l)(2), and submission of any judgment within 10 days after entry of same, under California Labor Code § 2699(l)(3).  Defendant may also choose, but is in no case obligated, to provide such notice to the LWDA.

22.    Exhibits and Headings. The terms of this Agreement include the terms set forth in any attached exhibits which are incorporated by this reference as though fully set forth herein. Any exhibits to this Agreement are an integral part of the Settlement. The descriptive headings of any paragraphs or sections of this Agreement are inserted for convenience of reference only and do not constitute a part of this Agreement.

23.    Amendment or Modification. This Agreement may be amended or modified only by a written instrument signed by counsel for all Parties or their successors-in-interest.

24.    Entire Agreement. This Agreement and any attached exhibits constitute the entire agreement among these Parties, and no oral or written representations, warranties or inducements have been made to any Party concerning this Agreement or its exhibits other than the representations, warranties and covenants contained and memorialized in such documents.

25.    Binding on Successors and Assigns. This Agreement shall be binding upon, and inure to the benefit of, the successors or assigns of the Parties hereto, as previously defined.

26.    California Law Governs. All terms of this Agreement and the exhibits hereto shall be governed by and interpreted according to the laws of the State of California.

27. <u>No Public Disclosure</u>. Named Plaintiff and Class Counsel agree that they will not issue any press releases, initiate any contact with the press, respond to any press inquiry or have any communication with the press about this case and/or the fact, amount or terms of the Settlement. In addition, Named Plaintiff and Class Counsel agree that they will not engage in any advertising or distribute any marketing materials relating to the Settlement, including but not limited to any postings on any websites maintained by Class Counsel; provided, however, that Class Counsel may state that it has settled a class and PAGA action against a company so long as neither Defendant, nor Named Plaintiff are identified. In addition, Named Plaintiff's counsel may list the case name, number, and a brief description of the claims in their declarations in support of qualifications as class counsel in future filings.

28. <u>Counterparts</u>. This Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument provided that counsel for the Parties to this Agreement shall exchange among themselves original signed counterparts.

29. <u>This Settlement Is Fair, Adequate and Reasonable</u>. The Parties believe this Settlement is a fair, adequate and reasonable settlement of this Action and have arrived at this Settlement after extensive arms-length negotiations, taking into account all relevant factors, present and potential.

30. <u>Cooperation and Drafting</u>. Each of the Parties has cooperated in the drafting and preparation of this Agreement. Hence, in any construction made to this Agreement, the same shall not be construed against any of the Parties.

31. <u>Calendar Days</u>. Unless otherwise noted, all reference to "days" in this Agreement shall be to calendar days.  In the event any date or deadline set forth in this Agreement falls on a weekend or federal legal holiday, such date or deadline shall be on the first business day thereafter.

32. <u>Severability</u>. In the event that one or more of the provisions contained in this Agreement shall for any reason be held invalid, illegal, or unenforceable in any respect,

Docusign Envelope ID: 545EDC4B-1DA5-4DD4-85D7-D4C187A7356C

such invalidity, illegality, or unenforceability shall in no way effect any other provision if Defense Counsel and Class Counsel, on behalf of the Parties and the Settlement Class, mutually elect in writing to proceed as if such invalid, illegal, or unenforceable provision had never been included in this Agreement.

**IN WITNESS WHEREOF**, the Parties and their Counsel have executed this Agreement as follows:

**NAMED PLAINTIFF**

Dated: ___2/25/2025___

*Stacey Campbell*
1EF4808D343B466...
Stacey Campbell

**CLASS COUNSEL**

Dated: ___2/25/2025___

Law Offices of Buchsbaum & Haag, LLP

*Brent Buchsbaum*
Brent Buchsbaum

**KERING EYEWEAR USA, INC.**

Dated: ___2/28/2025___

By: _____

Its: ___Glenn Rusk___

*Approved as to form:*

**GREENBERG TRAURIG, LLP**

Dated: ___2/28/2025___

_____
Ashley Farrell Pickett

Docusign Envelope ID: 546EDC4B-1DA5-4DD4-85D7-D4C187A7356C

# EXHIBIT A
# (Notice of Class and PAGA Action Settlement)

# NOTICE OF CLASS AND PAGA ACTION SETTLEMENT

## *Stacey Campbell v. Kering Eyewear USA, Inc.*
### United States District Court for the Central District of California
### Case No. 2:24-cv-10398-MCS-PD

A proposed settlement has been reached in the above-referenced class and PAGA action currently pending in the United States District Court for the Central District of California (the "Action"). **Because your rights may be affected by this settlement, it is important that you read this Notice carefully.**

*A court approved this notice. This is not an advertisement.*

*You are not being sued. Your legal rights are affected whether you act or not.*

## WHAT IS IN THIS NOTICE

1.   Why Should You Read This Notice?............................................................ Page 1
2.   What Is the Case About?........................................................................... Page 2
3.   What Does the Settlement Provide? ...........................................................Page 2
4.   What Are My Rights?  How Will My Rights Be Affected?......................................Page 3
5.   Who Are the Attorneys Representing the Parties? .................................................. Page 5
6.   How Will the Attorneys for the Class and Costs Be Paid?........................................Page 5

| | |
|---|---|
| *1.* | ***Why Should You Read This Notice?*** |

On February 9, 2024, Plaintiff Stacey Campbell ("Plaintiff") initiated a class action in the Superior Court of the State of California for the County of Los Angeles asserting various alleged violations of the California Labor Code and Unfair Competition Law. On August 12, 2024, Plaintiff filed a First Amended Complaint to assert an addition claim for civil penalties under California's Private Attorneys General Act ("PAGA"). Defendant Kering Eyewear USA, Inc. ("Defendant") removed the Action to the United States District Court for the Central District of California on December 3, 2024. Plaintiff's Action is pending in Courtroom 7C of the Central District of California and before the Honorable Mark C. Scarsi.

This Notice describes the nature of Plaintiff's Action and explains your rights in the settlement. You have received this Notice because records indicate that you are a Class Member and/or an Aggrieved Employee. "Class Member(s)" include all current and former Brand Ambassadors of Defendant employed in California from February 9, 2020 to [DATE] ("Class Period"). Those identified as Class Members will comprise the class Plaintiff will request the Court conditionally certify for settlement purposes only ("Class"). In addition, the "Aggrieved Employee(s)" include all current and former employees of Defendant employed in California from June 8, 2023, through [DATE] ("PAGA Period").

On [DATE], Plaintiff and Defendant (together, the "Parties") executed a Class and PAGA Action Settlement ("Settlement") as a compromise that resolves the class and PAGA claims asserted in the Action. The Settlement is subject to Court approval. On [DATE], the Court preliminarily approved the Settlement and conditionally certified the Class for settlement purposes only. The

Court has ordered that this Notice be provided to you. *The Court has not determined who is right or wrong is this lawsuit.*

| **2.    What Is the Case About?** |
| --- |

Plaintiff asserted claims against Defendant on behalf of Class Members and Aggrieved Employees for: failure to pay minimum wages; failure to pay overtime wages; failure to timely furnish accurate itemized wage statements; failure to pay wages at termination; failure to reimburse business expenses; and civil penalties pursuant to PAGA.

**Defendant denies any and all wrongdoing and liability. Defendant contends it conducted business and compensated employees consistent with the laws of the State of California. Defendant contends it has no liability for any claims under any statute, wage order, common law, or equitable theory. The Court has not ruled on the merits of Plaintiff's claims.**

| **3.    What Does the Settlement Provide?** |
| --- |

This Settlement is the result of good-faith and arm's-length negotiations between Plaintiff and Defendant. Each side agrees that given the risks and expense associated with continued litigation, this Settlement is fair and appropriate under the circumstances, and is in the best interests of the Class Members and Aggrieved Employees. Please be advised that the Court has not ruled on the merits of Plaintiff's claims or Defendant's defenses which means the Court *has not* decided who is right or wrong, that Plaintiff could establish any of the requisite elements for class or collective treatment of any of the class claims asserted, or that the PAGA claims alleged could proceed on a representative basis.

As part of the Settlement's terms, and in exchange for a release of the class and PAGA claims asserted by Plaintiff, Defendant's will pay **$25,000.00 (the "Gross Fund Value")**, which includes payment for attorneys' fees, costs, third-party settlement administrator costs, the class representative service award, payment to the California Labor and Workforce Development Agency ("LWDA"), and payment to Class Members and Aggrieved Employees. None of the sums shall revert to Defendant.

Plaintiff will request from the Gross Fund Value: (1) $6,250.00 for attorneys' fees; (2) up to $2,000.00 in costs; (3) up to $700.00 for settlement administration costs to ILYM Group, Inc.; (4) up to $1,500.00 as a service award to Plaintiff for her services as a class representative; and (5) a PAGA Payment of $1,500.00, of which $375.00 will be distributed to Aggrieved Employees and of which $1,125.00 will be paid to the LWDA. After deducting all the preceding amounts from the Gross Fund Value, the remaining amount ("Net Fund Value") will be distributed as individual settlement payments to Class Members who do not exercise their right to opt out of the Settlement as provided in Section 4 below.

Each Class Member's individual settlement payment will be calculated by dividing the Net Fund Value by all the weeks worked by all Class Members to determine a per workweek dollar figure. This figure will then be multiplied by each Class Member's respective workweeks to determine the Class Member's pro rata portion of the Net Fund Value ("Individual Settlement Payment"). Defendant will provide the Settlement Administrator with each Class Member's total workweeks

based on its records. 20% of each Individual Settlement Payment shall constitute the recovery of wages for which a W-2 will be issued, and the remaining 80% shall constitute the recovery of interest and penalties for which a 1099 will be issued.

Defendant's records indicate that you worked a total of _____ workweeks during the Class Period. Based on this estimate, your estimated Individual Settlement Payment is $_____.

Because you [are / are not] an Aggrieved Employee who worked for Defendant during the PAGA Period, you have been credited with having worked \_\_\_ pay periods. Based on this estimate and Defendant's records, the pro rata share of the PAGA Payment you will receive under the Settlement is estimated to be $_____. If these amounts are blank, then you are not an Aggrieved Employee that worked for Defendant in California during the PAGA Period, and will therefore not be receiving a share of the PAGA Payment. 100% of each individual PAGA Payment shall constitute the recovery of penalties for which a 1099 will be issued.

You will have the opportunity, should you disagree with Defendant's records regarding the number of workweeks and PAGA pay periods you worked reflected in this Notice, to provide documentation to show contrary employment dates. To do so, you must contact the Settlement Administrator and provide all applicable documentary evidence to support your dispute prior to the Opt-Out/Objection Deadline outlined in Section 4 below. Moreover, you cannot submit a dispute regarding the number of workweeks reflected in this Notice if you exercise the right to opt out of the Class. **Subject to court approval, you do not need to take any further action to receive money from this Settlement.**

| | |
|---|---|
| **4.** | ***What Are My Rights? How Will My Rights Be Affected?*** |

**<u>Participating in the Settlement</u>**

Under the Settlement, you will **<u>automatically</u>** receive an Individual Settlement Payment unless you opt out of the Class by following the opt-out procedure set forth below. If approved by the Court, the Settlement and its releases will be binding on all Class Members who do not timely opt out of the Settlement.

If you are also an Aggrieved Employee, you will **<u>automatically</u>** receive a share of the PAGA Payment. You will receive this payment regardless of whether you exercise the right to opt out of from the Class as described below.

If you are a current employee of Defendant, your decision about whether or not to participate in this Settlement will <u>not</u> affect your employment with Defendant.

**<u>Opting Out of the Settlement</u>**

If you wish to be excluded from participating in the Settlement, you must mail a written statement to the Settlement Administrator, at the address below, requesting to be excluded from the Settlement. To be considered valid, your request for exclusion must be in writing, signed by you, and contain your name, address, telephone number, and your Social Security number. You may, but are not required to, use the **Opt-Out/Request for Exclusion Form** that accompanies this Notice. Your request for exclusion must clearly indicate that you desire to be excluded from the Settlement. To be considered timely, your request for exclusion must be postmarked no later than

[_____] ("Opt-out/Objection Deadline"). The date of the postmark on the return mailing envelope shall be the exclusive means used to determine whether a request for exclusion has been timely submitted.

If you file a timely and valid written request for exclusion, you will no longer be a Class Member, and you will not be eligible to receive an Individual Settlement Payment or object to the terms of the Settlement, and you will not be bound by the terms of the Settlement.

Aggrieved Employees, however, cannot opt-out or exclude themselves from the Settlement with respect to the released PAGA claims detailed below. Aggrieved Employees will be issued an individual PAGA payment even if they opt-out from the Class.

**Objecting to the Settlement**

If you wish to object to the Settlement, you may advise the Court of your objection stating why you object to the Settlement. Your objection must state your full name; your social security number; dates of employment; address; telephone number; a statement providing the basis for your objection; a statement advising if you plan to address the Court at the Final Approval Hearing; and any legal briefs, papers or memoranda you propose to submit to the Court. The objection must be mailed to Settlement Administrator, at the address below, and must be postmarked no later than the Opt-out/Objection Deadline.

You may also, if you wish, appear at the Final Approval Hearing on [date] at [time] in Courtroom 7C of the United States District Court for the Central District of California to discuss your objections with the Court and the Parties regardless of whether or not you submitted a written objection to the Settlement Administrator. If you object to the Settlement, you may still receive an Individual Settlement Payment if the Court approves the Settlement despite objections.

## WHAT AM I RELEASING UNDER THE SETTLEMENT?

If and when the Court grants final approval of the Settlement, upon the Effective Date and upon Defendant fully funding the settlement, all Class Members and/or Aggrieved Employees will release the following claims:

**All Class Members** who do not opt out of the Settlement will release and discharge Defendant and the Released Parties, for the duration of the Class Period, from all claims pled in the Operative Complaint and PAGA Notice and any claims that were, or reasonably could have been or still could be, pled based on facts alleged, or in any way related to the facts contained, in the Operative Complaint and PAGA Notice, including all claims for failure to pay for all hours worked, unpaid wages (including minimum wage, straight time, overtime and double time), failure to pay premium wages at the correct regular rate, failure to pay final wages, failure to provide accurate wage statements, failure to reimburse business expenses, and unlawful business practices under the California Labor Code and/or the California Business and Professions Code, and any other claims for restitution or equitable relief, statutory penalties available for any of the foregoing, and attorneys' fees and costs.

**All Aggrieved Employees** will discharge Defendant and the Released Parties, for the duration of the PAGA Period, from all claims pled in the Operative Complaint and the PAGA Notice, and any claims that were, or reasonably could have been or still could be, pled based on facts alleged, or in any way related to the facts contained, in the Operative Complaint and PAGA Notice, including, all claims for failure to pay for all hours worked, unpaid wages (including minimum wage, straight time, overtime and double time), meal period violations (including meal premiums), rest break violations (including rest premiums), failure to pay premium wages at the correct regular rate,

failure to pay final wages, failure to provide accurate wage statements, failure to reimburse business expenses, failure to comply with requirements regulating hours and days of work, failure to maintain payroll and timekeeping records, and attorneys' fees and costs.

The "Released Parties" means, and refers to, Kering Eyewear USA, Inc., and all its current, former and future officers, directors, managers, employees, consultants, partners, shareholders, agents, clients, parents, successors, assigns, accountants, insurers, or legal representatives.

**Uncashed Settlement Checks**

Settlement checks returned as undeliverable or those Settlement checks remaining uncashed for more than 180 days after issuance shall be distributed to the Controller of the State of California to be held pursuant to the Unclaimed Property Law for the benefits of those Class Members and/or Aggrieved Employees and until they claim their property.

| | |
|---|---|
| **5.** | ***Who Are the Attorneys Representing the Parties?*** |

Class Counsel, appointed and approved by the Court for settlement-purposes only, will represent you. However, you may choose to be represented by your own counsel at your own cost.

Attorneys for Plaintiff & the Class are:
  Brent S. Buchsbaum
  Laurel N. Haag
  Law Offices of Buchsbaum & Haag, LLP
  100 Oceangate, Suite 1200
  Long Beach, CA 90802
  Telephone: (562) 733-2498

Attorneys for Defendant are:
  Ashley Farrell Pickett
  Oscar E. Peralta
  Greenberg Traurig, LLP
  1840 Century Park East, 19th Floor
  Los Angeles, CA 90067
  Telephone: (310) 586-7700

| | |
|---|---|
| **6.** | ***How Will the Attorneys for the Class and Costs Be Paid?*** |

Class Counsel is seeking an award from the Court for attorneys' fees of up to $6,250.00 and litigation costs of up to $2,000.00. Plaintiff is seeking a service award from the Court of up to $1,500.00. The actual amounts awarded will be determined by the Court.

If you need more information or have any questions, you may contact the Settlement Administrator at the telephone number listed below.

*Stacey Campbell v. Kering Eyewear USA, Inc.*, Settlement Claims Administration
c/o [Settlement Administrator]
[ADDRESS]
[PHONE]

**PLEASE DO NOT CALL OR WRITE THE COURT ABOUT THIS NOTICE.**

**THIS NOTICE IS NOT A RECOMMENDATION BY THE COURT AS TO ANY ACTION YOU SHOULD OR SHOULD NOT TAKE.**

**\*\*\*THIS IS NOT AN ADVERTISEMENT FROM A LAWYER\*\*\***

# EXHIBIT B
## (Opt-Out/Request for Exclusion Form)

## OPT-OUT/REQUEST FOR EXCLUSION FORM

Claim #
«Firstl» «Lastl»
«c/o»
«Address 1» «Address2»
«City», «ST» «Zip» «Country

*Stacey Campbell v. Kering Eyewear USA, Inc.*, United States District Court for the Central District of California, Case No. 2:24-cv-10398-MCS-PD (the "Action").

**SUBMIT THIS FORM NO LATER THAN _____, 2025 ONLY IF YOU WISH TO OPT OUT OF THE CLASS SETTLEMENT. DO NOT SUBMIT THIS EXCLUSION FORM IF YOU WISH TO RECEIVE MONEY FROM THE SETTLEMENT.**

I have reviewed the Notice of Class and PAGA Action Settlement and understand that a person is a Class Member in the Action if he or she is a current or former Brand Ambassador of Kering Eyewear USA, Inc. employed in California between February 9, 2020 and [DATE]. I understand that this settlement is intended to compensate such Class Members.

I understand that I may exclude myself from, or "opt out" of, the class settlement of the Action. *I understand that I may opt out either because I do not believe that I have a claim myself, because I want to bring a separate lawsuit or for any other reason.* I understand that, in any separate lawsuit, I may receive nothing or less than I would have received if I had participated in the settlement. I understand that any separate lawsuit by me will be undertaken at my own expense and at my own risk, and that there is a deadline to pursue such claims known as the "statute of limitations." I understand that counsel for the class will not represent my interests if I opt out.

I understand that if I do not opt out, I will receive a payment if the class settlement of the Action is approved by the Court. *I understand that, by requesting to be excluded from the class settlement, I will receive no money from the settlement in accordance with the Settlement of Class and PAGA Action entered into by Plaintiff Stacey Campbell and the defendant in the Action.* No one has coerced or forced me to opt out; it is my own decision. **I opt out of the settlement.**

| | |
|---|---|
| _____ | _____ |
| Printed Name | Signature |
| _____ | _____ |
| Date (mm/dd/yyyy) | Telephone |

_____
Mailing Address

| | | |
|---|---|---|
| _____ | _____ | _____ |
| City | State | Zip Code |

\_\_ \_\_ \_\_ \_\_ (Last Four Digits of Social Security Number)

THIS FORM <u>MUST</u> BE POSTMARKED BY _____, 2025 AND DELIVERED TO THE SETTLEMENT ADMINISTRATOR AT THE FOLLOWING ADDRESS:

*Stacey Campbell v. Kering Eyewear USA, Inc.*
Settlement Claims Administration
c/o [Claims Administrator]
P.O. Box \_\_\_
City, State ZIP

**YOU SHOULD <u>KEEP A COPY</u> OF THIS DOCUMENT FOR YOUR RECORDS.  YOU MAY WISH TO MAIL IT RETURN RECEIPT REQUESTED.**