Brent S. Buchsbaum (SBN CA 211279)
brent@buchsbaumshaag.com
Laurel N. Haag (SBN CA 211279)
laurel@buchsbaumhaag.com
Law Offices of Buchsbaum & Haag, LLP
100 Oceangate, Suite 1200
Long Beach, California 90802
Telephone: 562.733.2498

Attorneys for Plaintiff Stacey Campbell

Ashley Farrell Pickett (SBN 271825)
ashley.farrellpickett@gtlaw.com
Oscar E. Peralta (SBN 335450)
oscar.peralta@gtlaw.com
Greenberg Traurig, LLP
1840 Century Park East, Suite 1900
Los Angeles, California 90067
Telephone: 310.586.7700

Attorneys for Defendant Kering Eyewear USA, Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STACEY CAMPBELL, individually, and as a representative of other aggrieved employees,<br><br>     Plaintiff,<br><br>v.<br><br>KERING EYEWEAR USA, INC., a Corporation, and DOES 1 through 250, inclusive,<br><br>     Defendants. | Case No. 2:24-cv10398-MCS-PD<br><br>**NOTICE OF MOTION AND JOINT MOTION FOR FINAL APPROVAL OF CLASS AND PAGA ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>*[Filed and served concurrently with Declaration of Stacey Campbell, Declaration of Brent S. Buschbaum; Declaration of Nicole Bench of ILYM Group, Inc.; and [Proposed] Order]*<br><br>Date:  October 27, 2025<br>Time:  9:00 a.m.<br>Dept.:  7C |

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on October 27, 2025 at 9:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 7C of the United States District Court for the Central District of California, located at 350 W. 1st Street, 7th Floor, Los Angeles, California 90012, Plaintiff Stacey Campbell ("Plaintiff") and Defendant Kering Eyewear USA, Inc. ("Defendant," and together with Plaintiff, "Parties") will, and hereby do, jointly move the Court for an order:

1. Finally certifying the following class for settlement only: all current and former Brand Ambassadors of Kering Eyewear USA, Inc. employed in California between February 9, 2020, and July 11, 2025 ("Class");

2. Finally approving Plaintiff Stacey Campbell as the Class Representative;

3. Finally approving Brent Buchsbaum of The Law Offices of Buchsbaum & Haag, LLP as counsel for the Class;

4. Finally approving the settlement claims under the terms set forth in the Parties' Settlement Agreement;

5. Finally approving the payment of the Gross Fund Value of $25,000.00;

6. Finally approving the payment of $700.00 for the settlement administrator, ILYM Group, Inc., from the Gross Fund Value;

7. Finally approving a Service Award of $1,500.00 to Plaintiff in consideration for her efforts in prosecuting this case;

8. Finally approving payment of reasonable attorneys' fees to Class Counsel in the amount of $6,250.00 and costs in the amount of $1943.69;

9. Finally approving PAGA penalties in the amount of $1,500.00, seventy-five percent (75%) or $1,125.00 of which will be paid to the Labor and Workforce Development Agency out of the Gross Fund Value and twenty-five percent (25%) or $375.00 of which will be paid distributed to "Aggrieved Employees," defined as all current and former Brand Ambassadors of Kering Eyewear USA, Inc. employed in California during the PAGA Period (June 8, 2023 to July 11, 2025);

10. Entering a Final Judgment consistent with the terms of the Parties' Settlement Agreement.

This Joint Motion is based on this Notice of Motion, the Memorandum of Points and Authorities, the Declaration of Stacey Campbell, the Declaration of Brent S. Buchsbaum, the Declaration of Nicole Bench, all pleadings in this action, and such other written and oral argument as the Court may entertain on this Motion.

Respectfully submitted,

Dated: October 13, 2025    Law Offices of Buchsbaum & Haag LLP


By: _/s/ Brent S. Buchsbaum_
Brent S. Buchsbaum
Attorney for Plaintiff Stacey Campbell

Dated: October 13, 2025    Greenberg Traurig, LLP


By: _/s/ Ashley Farrell Pickett_
Ashley Farrell Pickett
Attorneys for Defendant
Kering Eyewear USA, Inc.
Attorney for Plaintiff Stacey Campbell

JOINT MOTION FOR FINAL APPROVAL

ACTIVE 715476422v2

# TABLE OF CONTENTS

Page

I.      INTRODUCTION .................................................................................. 8

II.     PROCEDURAL BACKGROUND ......................................................... 9

III.    THE PROPOSED SETTLEMENT ....................................................... 10

IV.     THE SETTLEMENT ADMINISTRATION PROCESS ......................... 12

V.      THE COURT SHOULD GRANT FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT ................................................................................. 13

        A.    The Settlement Is the Result of Arm's-Length Negotiations ........................ 14

        B.    The Strength of the Case, and the Risk, Expense, Complexity, and Likely Duration of Further Litigation All Favor Approval .................... 15

        C.    The Amount Offered in Settlement Favors Final Approval. ........................ 18

        D.    The Extent of Discovery and the Stage of Proceedings Favors Final Approval .............................................................................. 18

        E.    The Experience and Views of Counsel Favor Settlement ............................ 19

        F.    There are No Notices of Objection to the Class Settlement. ........................ 19

VI.     PLAINTIFF'S PROPOSED SERVICE AWARD IS REASONABLE AND SHOULD BE APPROVED. ........................................................... 20

VII.    THE REQUESTED ATTORNEYS' FEES AND COSTS ARE REASONABLE AND SHOULD BE APPROVED. ....................................... 21

VIII.   THE SETTLEMENT ADMINISTRATION COSTS ARE FAIR AND REASONABLE AND SHOULD BE APPROVED. ................................ 22

IX.     CONCLUSION .................................................................................... 23

ACTIVE 715476422v2

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Bellinghausen v. Tractor Supply Co.*,
   306 F.R.D. 245 (N.D. Cal. 2015)............................................................................ 13, 18

*Campanelli v. Image First Healthcare Laundry Specialists, Inc.*,
   2018 U.S. Dist. LEXIS 215287, at *7-8 (N.D. Cal. Dec. 21, 2018) ........................... 17

*Crayton v. Sailormen, Inc.*,
   2023 U.S. Dist. LEXIS 127143 (S.D. Ga. July 24, 2023)............................................ 16

*Harris v. Marhoefer*,
   24 F.3d 16 (9th Cir. 1994) ........................................................................................... 22

*Linner v. Cellular Alaska P'ship*,
   151 F.3d 1234 (9th Cir. 1998) ..................................................................................... 19

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ....................................................................................... 20

*Millan v. Cascade Water Services, Inc.*,
   No. 1:12-cv-01821-AWI-EPG, 2016 WL 3077710 (E.D. Cal. June 2, 2016) ............. 21

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004)................................................................... 15, 18, 19

*Officers for Justice v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*,
   688 F.2d 615 (9th Cir. 1982) ....................................................................................... 18

*Ontiveros v. Zamora*,
   303 F.R.D. 356 (E.D. Cal. 2014) ................................................................................. 19

*In re Pacific Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) ......................................................................................... 19

*Pardo v. Papa, Inc.*,
   2024 U.S. Dist. LEXIS 234921 (N.D. Cal. Dec. 31, 2024).......................................... 17

*Pokorny v. Quixtar, Inc.*,
   No. C 07-0201 SC, 2013 U.S. Dist. LEXIS 100791 (N.D. Cal. Jul. 18, 2013) ........... 22

JOINT MOTION FOR FINAL APPROVAL

## TABLE OF AUTHORITIES
### (Continued)

Page(s)

**Federal Cases**

*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ........................................................................... 20

*Schaffer v. Litton Loan Servicing, LP*,
  No. CV 05-07673 MMM, 2012 WL 10274679 (C.D. Cal. Nov. 13, 2012)................. 20

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ................................................................... 14, 20

*In re Tableware Antitrust Litig.*,
  484 F. Supp. 2d 1078 (N.D. Cal. 2007) ...................................................... 9, 14

*Van Vranken v. Atl. Richfield Co.*,
  901 F. Supp. 294 (N.D. Cal. 1995) ........................................................... 20, 22

*Villafan v. Broadspectrum Downstream Servs.*,
  No. 18-cv-06741-LB, 2021 U.S. Dist. LEXIS 249763 (N.D. Cal. Apr. 8, 2021)... 14, 21

*Vizcaino v. Microsoft Corp.*,
  290 F. 3d 1043 (9th Cir. 2002) ..................................................................... 21

**Other State Cases**

*Stacey Campbell v. Kering Eyewear USA, Inc.*,
  Case No. 24STCV03552............................................................................... 9

**Federal Statutes**

California's Unfair Competition Law ..................................................................... 9

**California Statutes**

California Labor Code ....................................................................................... 9

**Other Authorities**

29 C.F.R. § 541.706 ......................................................................................... 16

Fed. R. Civ. P. 23 ............................................................................................. 17

6

ACTIVE 715476422v2

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

**Other Authorities**

Fed. R. Civ. P. 23(e)(2) ....................................................................................... 8

Fed. R. Civ. P. 23(h) .......................................................................................... 22

JOINT MOTION FOR FINAL APPROVAL

ACTIVE 715476422v2

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff Stacey Campbell ("Plaintiff") initiated a class action lawsuit against Kering Eyewear USA, Inc. ("Kering" or "Defendant") (together with Plaintiff, "Parties") on behalf of a putative class of current and former Brand Ambassadors of Kering employed in California between February 2, 2020, and the present ("Class"). Following the Parties' thorough investigation of the facts and law pertinent to Plaintiff's theories of liability, the Parties have resolved her class and PAGA claims. This Court preliminary approved the Settlement on July 11, 2025.[1] Plaintiff now moves for final approval of all payments allocated and provided for by the Parties' Settlement Agreement.

Though Plaintiff and Defendant fundamentally disagree about the merits of the claims and the chances for certification, the Parties recognized the significant risk each side faced and the significant expense of litigating the matter through trial. Seeing the potential value of early resolution—particularly given the relatively small size of the Class which consists of approximately 30 putative members—the Parties engaged in thorough settlement discussions and an informal exchange of information that included: a production of Plaintiff's earning statements, expense reimbursement requests, an anonymized class list, sample arbitration agreements signed by the Class; as well as an informal exchange of the Parties' positions on the merits of Plaintiff's unpaid wage and reimbursement theories that included a substantive discussion of applicable case law. This was also preceded by multiple meet and confer conferences between the Parties regarding deficiencies Defendant identified in Plaintiff's pleadings. Ultimately, the Parties reached a settlement after weeks of deliberation, meetings with their clients, and evaluation of the claims and attendant risks.

The Parties respectfully request that the Court approve the Settlement and grant final approval of the proposed Class for settlement purposes only because, for the reasons below, it is "fair reasonable, and adequate," Fed. R. Civ. Proc. 23(e)(2), and it "is the product of

---

[1] The Parties' Settlement Agreement is attached as **Exhibit 1** to the Declaration of Brent Buchsbaum ("Buchsbaum Decl.").

ACTIVE 715476422v2

serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls with the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007).

## II.  PROCEDURAL BACKGROUND

On February 9, 2024, Plaintiff filed a Class Action Complaint against Defendant in the Superior Court of the State of California, County of Los Angeles, entitled *Stacey Campbell v. Kering Eyewear USA, Inc.*, Case No. 24STCV03552 ("State Court Action"). Plaintiff asserted the following purported causes of action premised on alleged violations of the California Labor Code: (1) unpaid overtime; (2) non-compliant wage statements; (3) failure to pay all wages at termination; and (4) unreimbursed business expenses. Plaintiff also asserted a cause of action for alleged violations of California's Unfair Competition Law. On August 12, 2024, Plaintiff filed a First Amended Class Action Complaint to assert an additional cause of action for civil penalties under PAGA.

On December 3, 2024, Defendant removed the State Court Action to the United States District Court for the Central District of California. Following removal, the Parties met and conferred regarding various deficiencies Defendant identified in Plaintiff's Second Amended Complaint with the hopes of reaching a resolution that avoided the necessity of Defendant's contemplated motion to dismiss for failure to state a claim. On December 16, 2024, Plaintiff filed a Third Amended Complaint. That same day, Plaintiff's Class and PAGA Action was transferred to the Hon. Mark C. Scarsi's calendar and ordered related to Plaintiff's separate wrongful termination action ("Plaintiff's Individual Action").

Given the Parties' thorough meet and confer efforts—both telephonically and over email—regarding the merits of Plaintiff's claims and Defendant's defenses, the Parties agreed to engage in informal settlement discussions. On January 15, 2025, following several rounds of discussions, the Parties' reached a settlement and subsequently memorialized it in a long-form agreement. On January 21, 2025, upon request from the Parties, the Court entered an order vacating Defendant's responsive pleading deadline and set March 21, 2025,

ACTIVE 715476422v2

as the deadline for Plaintiff to move for preliminary approval.[2]

On July 11, 2025, the Court entered an Order Granting Preliminary Approval of Class Action Settlement ("Preliminary Approval Order") (EFC No. 23), thereby preliminary approving the terms of the Settlement, the Class Notice, and the proposed administration procedures and associated deadlines.

Plaintiff now moves for final approval of the Settlement, Settlement Administration Costs, and the PAGA allocation, and for final approval of the requested Attorneys' Fees and Costs and Service Award.

## III.    THE PROPOSED SETTLEMENT

Because the Settlement Agreement contains the full terms of the settlement for the Court's review (*see* Buchsbaum Decl., Ex. 1), only the most salient points are set forth here. Briefly, the agreement provides for a common fund of $25,000, allocated as follows:

(a) a maximum of $6,250 (25% of the Gross Fund Value) for the payment of Class Counsel's Attorney's Fees; (b) a maximum of $2,000 for the payment of Class Counsel's Costs; (c) $1,125 to the State of California for its 75% share of the $1,500 allocated for settlement of the PAGA claims; (d) $375 to the Aggrieved Employees for their 25% share of the $1,500 allocated for settlement of the PAGA claims; (d) a maximum of $1,500 as a Service Award to Plaintiff; (e) a maximum of $700 for Settlement Administrator Costs; and (f) an estimated $13,050 to be distributed as Settlement Payments to Class Members.

(Buchsbaum Decl., Ex. 1, §§ I.15, I.18.) Sums not awarded by the Court will revert to the Class and not to Defendant. (*Id.*) The employer's share of any payroll taxes will be paid separately and apart from the Settlement and shall not be deducted from the Gross Fund Value. (*Id.* § IV.15.)

---

[2] For the avoidance of doubt, the Parties' Settlement resolves Plaintiff's class and PAGA action claims only; her individual action for wrongful termination was separately resolved and settled.

**Settlement Classes.** The Settlement is based on the following class definition: all current and former Brand Ambassadors of Kering Eyewear USA, Inc. employed in California between February 9, 2020, and the date of preliminary approval, i.e., July 11, 2025. (*Id.* § I.5, I.8.)

**Consideration Paid to Class Members.** The Parties estimate $13,050 will be distributed to Class Members as Settlement Payments. Class Members need not do anything to participate in the Settlement—they will automatically receive their share of the Settlement unless they timely submit a Request for Exclusion. (*Id.* § IV.15(b).) The Settlement Administrator will calculate each Class Member's individual Settlement Payment based on the number of workweeks worked (determined by that Class Member's hire and termination dates) during the Class Period. (*Id.* § IV.12.) The individual Settlement Payments will be allocated as 20% wages and 80% as interest/penalties. (*Id.* § IV.12(d).)

**Release.** In exchange for their Settlement Payments, Class Members will release Defendant and the Released Parties (as defined in section I.30 of the Agreement) from:

> All claims pled in the Operative Complaint and PAGA Notice and any claims that were, or reasonably could have been or still could be, pled based on facts alleged, or in any way related to the facts contained, in the Operative Complaint and PAGA Notice, including all claims for failure to pay for all hours worked, unpaid wages (including minimum wage, straight time, overtime and double time), failure to pay premium wages at the correct regular rate, failure to pay final wages, failure to provide accurate wage statements, failure to reimburse business expenses, and unlawful business practices under the California Labor Code and/or the California Business and Professions Code, and any other claims for restitution or equitable relief, statutory penalties available for any of the foregoing, and attorneys' fees and costs.

(*Id.* § I.28.)

**Service Award to Class Representative.** Plaintiff will apply to the Court for a service award totaling up to $1,500. Defendant does not oppose this request. (*Id.* § IV.6.)

**Attorneys' Fees and Costs.** Class counsel will apply to the Court for a total award of $6,250, which constitutes twenty-five percent (25%) of the Gross Fund Value, plus costs of up to $2,000. Plaintiff believes these fees and costs are reasonable under applicable law. Defendant does not oppose these requests. (*Id.* §§ IV.7, IV.11-12.) The amount of fees and costs sought was disclosed in the Notice to Class Members.

**Claims Administration Costs.** Administration costs include the costs arising from printing, distributing, and tracking documents for the Settlement, calculating the amounts due to Class Members, and executing the other duties set forth in the Agreement. These costs, which are not to exceed $750, will be paid from the common fund. (*Id.* § VI.9.)

**PAGA Settlement Amount.** Subject to Court approval, the Parties agree that $1,500 will be allocated to settle Plaintiff's PAGA claims. This PAGA Allocation will be distributed as follows: 75% (which totals $1,125) shall be paid to the State of California and the remaining 25% (which totals $375) shall be paid to the Aggrieved Employees on a proportionate basis. (*Id.* § I.22.)

## IV.    THE SETTLEMENT ADMINISTRATION PROCESS

The Court approved Settlement Administrator, ILYM Group, has taken all necessary steps to effectuate the notice and settlement administration process, as set forth in the Court's Preliminary Approval Order and Notice Plan.

On July 14, 2025, ILYM Group received a copy of the Court-approved Class Notice. (Declaration of Nicole Bench ("Bench Decl.,") at ¶ 4.)  On July 23, 2025, ILYM Group received the class data file which contained each Class Members' and Aggrieved Employees': (1) full name; (2) last known address; (3) social security number; (4) workweeks; and (5) PAGA pay periods (collectively, "Class Data"). (*Id.* at ¶ 5.) The Class Data was uploaded to ILYM Group's database and checked for duplicates and other possible discrepancies. (*Id.*) The Class Data contained unique records for thirty-three individuals who worked a total of 4,206 workweeks. (*Id.* at ¶ 12.) Of the thirty-three individuals, twenty-six were identified as Aggrieved Employees for PAGA, working a total of 1,027 pay periods. (*Id.* at ¶ 15.)

ILYM Group processed all thirty-three (33) names and addresses contained in the Class Data against the National Change of Address ("NCOA") database, maintained by the United States Postal Service ("USPS"), for the purpose of updating and confirming the mailing addresses of the Class Members before mailing the Class Notice. (*Id*. at ¶ 6.) The NCOA contains requested change of addresses filed with USPS. (*Id*.) To the extent that an updated address was found in the NCOA database, the updated address was used for mailing the Class Notice. (*Id*.) To the extent that no updated address was found in the NCOA database, the original address provided by counsel for Defendant was used for mailing the Class Notice. (*Id*.)

On August 8, 2025, the Class Notice was mailed via U.S. First Class Mail, to all thirty-three (33) individuals identified as Class Members and Aggrieved Employees for PAGA in the Class Data. (*Id*. at ¶ 7.)

As of the date of this Motion, zero (0) Class Notices were returned to ILYM Group. (*Id*. at ¶ 8.) ILYM Group received one (1) valid and timely Request for Exclusion. (*Id*. at ¶ 9.)

The response deadline was October 7, 2025. (*Id*.) To date, there are thirty-two (32) Class Members who did not submit a valid and timely Request for Exclusion and are therefore deemed to be Settlement Class Members, representing 96.97% of the Class. (*Id*. at ¶ 12.)

Pursuant to the terms of the Settlement, the Gross Fund Value of $25,000 will be distributed to the Class Members in accordance with the terms of the Settlement Agreement. (Buchsbaum Decl., Ex. 1, §§ I.15, I.18.)

## V.    THE COURT SHOULD GRANT FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT.

The Court should grant final approval, as the proposed settlement is fair, reasonable, and adequate. "Judicial policy strongly favors settlement of class actions." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 252 (N.D. Cal. 2015). When parties settle a class action before a class certification decision, the Court must "peruse the proposed

ACTIVE 715476422v2

compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).

In deciding whether to approve a proposed settlement, "[t]he court need not ask whether the proposed settlement is ideal or the best possible; it determines only whether the settlement is fair, free of collusion, and consistent with the named plaintiff's fiduciary obligations to the class." *Villafan v. Broadspectrum Downstream Servs.*, No. 18-cv-06741-LB, 2021 U.S. Dist. LEXIS 249763, at *14 (N.D. Cal. Apr. 8, 2021) (*citing Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026-27 (9th Cir. 1998).)

To determine whether a proposed settlement is fair, reasonable, and adequate, the Court first considers whether (a) it is the result of non-collusive negotiations, *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079, and it must then consider several factors bearing on the agreement's fairness, including, but not limited to: (b) the strength of the Plaintiff' case, and the risk, expense, complexity, and likely duration of further litigation; (c) the amount offered in settlement; (d) the extent of discovery completed and the stage of the proceedings; (e) the experience and views of counsel; and (f) the reaction of the class members to the proposed settlement, *see Staton v. Boeing Co.,* 327 F.3d 938, 959 (9th Cir. 2003). An analysis of these factors shows that the Settlement is fair, adequate, and reasonable.

## A.     The Settlement Is the Result of Arm's-Length Negotiations.

The Parties conducted significant investigation of the facts and law during the prosecution of this Action. This included multiple meet and confer conferences between the Parties regarding deficiencies Defendant identified in Plaintiff's pleadings; an exchange of informal discovery between the Parties that included, among other things, a production of Plaintiff's earning statements, expense reimbursement requests, an anonymized class list, and sample arbitration agreements signed by portions of the Class; and an informal exchange of the Parties' positions on the merits of Plaintiff's unpaid wage and reimbursement theories that included a substantive discussion of case law as well as the risks each Party faced should the Action not settle. The Parties reached a settlement only

after weeks of deliberation, meetings with their clients, and evaluation of the claims and attendant risks. (Buchsbaum Decl., ¶27.) These deliberations were at arm's length.

## B. The Strength of the Case, and the Risk, Expense, Complexity, and Likely Duration of Further Litigation All Favor Approval.

This factor supports final approval because the Settlement confers substantial benefits to Class Members, particularly in light of the complex theories of liability asserted and the uncertainties of further litigation. *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.").

Plaintiff asserts two principal claims. First, Plaintiff alleges Kering misclassified her and other Brand Ambassadors as outside salespersons during the COVID-19 pandemic. Plaintiff alleges that, in response to pandemic-era restrictions, Brand Ambassadors performed most of their work from home, where Zoom meetings and telephone calls were the primary mode of sales. Accordingly, Plaintiff claims the outside salesperson no longer applied as Brand Ambassadors were no longer working more than half of their working time in the field selling, as required by California's outside salesperson exemption. This purported misclassification resulted in unpaid minimum wages and overtime. And as a result of the allege failure to pay these wages, Plaintiff also asserts two derivative claims for inaccurate wage statements and waiting time penalties.

Defendant adamantly denies that Plaintiff's misclassification theory has merit. To start, Defendant alleges that Plaintiff's misclassification theory is inherently self-limiting. Indeed, Defendant contends that as soon as COVID-19 restrictions eased in the summer of 2020, Plaintiff and all other Brand Ambassadors returned to the field to sell. Any class claims premised on unpaid wages cannot extend through present and end, at best, July 2020. And even if Plaintiff and other Brand Ambassadors were not out on the field selling from the start of the pandemic through summer 2020, "[a]n exempt employee will not lose the exemption by performing work of a normally nonexempt nature because of the existence of

ACTIVE 715476422v2

an emergency." 29 C.F.R. § 541.706. Thus, when "emergencies arise that threaten the safety of employees, a cessation of operations or serious damage to the employer's property, any work performed in an effort to prevent such results is considered exempt work." *Id.; see also Crayton v. Sailormen, Inc.*, 2023 U.S. Dist. LEXIS 127143 (S.D. Ga. July 24, 2023). Thus, Defendant alleges that even if Plaintiff was not out on the field selling, this was the result of a government emergency, not some requirement imposed by her employer. Although no California court has ruled on the applicability of the FLSA's emergency regulations in this context, Defendant is confident Plaintiff has no viable misclassification claim.

Second, Plaintiff alleges Kering failed to reimburse her and other Brand Ambassadors for work-related business expenses. Plaintiff alleges that Kering reimbursed Brand Ambassadors at one-half IRS standard mileage rates which did not sufficiently cover the actual costs of business-related driving expenses incurred. Plaintiff also alleges that Brand Ambassadors were required to use their home internet to perform their work duties. Despite this, Kering purportedly did not reimburse Brand Ambassadors for the use of their home internet for work-related purposes.

Defendant, again, adamantly denies that Plaintiff's reimbursement theories have merit. Defendant contends Plaintiff ignores that her and all other Brand Ambassadors received a flat $500 stipend *in addition* to one-half IRS standard mileage rates. Taking this $500 stipend into account, Defendant alleges that Brand Ambassadors received full (i.e., 100%) IRS standard mileage rates and additional monies to cover the costs of all business-related driving expenses. Defendant also alleges that Plaintiff and other Brand Ambassadors received company-provided cellphones and iPads with internet connectivity that could be used as a hotspot. Accordingly, not only was Plaintiff's purported home internet use not necessary, but also incurred without Defendant's knowledge. Defendant therefore believes Plaintiff's reimbursement claim will fail on the merits.

Aside from the overall merits, Defendants contend that proof of the elements of each claim would devolve into fact-intensive and individualized proof sets, and thus the claims

16

ACTIVE 715476422v2

could not be certified for class treatment. Initially, 14 out of the 29 Class Members signed valid and enforceable arbitration agreements. It is well-established that "plaintiffs who are not subject to an arbitration agreement cannot represent a class of persons who are." *Pardo v. Papa, Inc.*, 2024 U.S. Dist. LEXIS 234921, at *6 (N.D. Cal. Dec. 31, 2024); *Campanelli v. Image First Healthcare Laundry Specialists, Inc*., 2018 U.S. Dist. LEXIS 215287, at *7-8 (N.D. Cal. Dec. 21, 2018) ("Though plaintiff is not subject to an arbitration agreement, he seeks to represent a Rule 23 class that includes drivers who are subject to arbitration agreements. The Ninth Circuit has foreclosed the viability of that proposition."). Thus, Defendant contends, absent settlement, that the Class is not capable of certification on adequacy and numerosity grounds.

In addition, Defendant contends Plaintiff's unpaid wage and reimbursement claims face obstacles to certification. Indeed, whether Plaintiff or Brand Ambassadors were misclassified under Plaintiff's theory depends on an assessment of, for example, when each Class Member returned to the field to sell once COVID restrictions eased; how much they were working in any one week; whether they were working more than fifty percent of the time out in the field; what communications were given by Defendant in this regard; and whether any mechanisms were in place to enforce these expectations. Similarly, Defendant contends Plaintiff's insufficiency-of-reimbursement theory requires multiple individualized inquiries including, but not limited to, ascertaining the amount of travel each Class Member completed every month; the difference between the costs incurred and the reimbursements received from Kering that included ½ IRS standard mileage reimbursements and a flat $500 stipend; the reasonableness of the reimbursement sought, including factors such as the type of car driven, brand of gasoline purchased, and the amount of alleged wear and tear suffered; and the extent to which Brand Ambassadors did or did not seek reimbursement. In this way, Defendant maintains that it has strong arguments that Plaintiff's claims will not be certified.

The Parties therefore agree that, given the complexity of the theories at issues, absent settlement, each side would engage in extensive discovery culminating in expensive motion practice (e.g., class certification and motion for summary judgment)—none of which is

ACTIVE 715476422v2

commensurate with the rather modest size of the Class that consists of approximately 30 members.

### C.    The Amount Offered in Settlement Favors Final Approval.

"An important consideration in judging the reasonableness of a settlement is the strength of the plaintiff's case on the merits balanced against the amount offered in the settlement." *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004). At the same time, "the Court need not reach an ultimate conclusion about the merits of the dispute now, 'for it is the very uncertainty of outcome in litigation and avoidance of wastefulness and expensive litigation that induce consensual settlements.'" *Bellinghausen*, 306 F.R.D. at 255 (*citing Officers for Justice v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)). "Ultimately, the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Officers for Justice*, 688 F.2d at 625 (citation omitted).

Here, particularly in light of the uncertainties attendant to this litigation, the amount of the Settlement is not insignificant considering the relatively small size of the Class. The Settlement will provide the most highly compensated Class Members (i.e., those working for the entire Class Period) with an individual recovery of approximately **$835**. The average recovery exceeds **$450**. Given the uncertainties surrounding class certification and the unsettled nature of issues impacting liability, this is an excellent result for the Class.

### D.    The Extent of Discovery and the Stage of Proceedings Favors Final Approval.

This Settlement comes early in the litigation. Still, the Parties proactively worked up the case through an informal exchange of information. (*See, e.g.*, Buchsbaum Decl., Ex. 1, § II (detailing materials provided to Plaintiff's counsel).) Because these are items and information that Plaintiff would normally request and receive through formal discovery, Plaintiff believes she had all the information necessary to analyze the potential damages at issue in the case as well as the risks she faced both in certifying the class and at dispositive motion. (Buchsbaum Decl., ¶35.) Thus, "the [P]arties have sufficient information to make

18

ACTIVE 715476422v2

an informed decision about settlement." *Linner v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998). This early resolution, made at a time when the Parties have enough information to make an informed appraisal of the case but before the incurring of significant expense, strongly benefits the Class and favors approval.

### E.    The Experience and Views of Counsel Favor Settlement.

Counsel's support is accorded "great weight" because counsels have the greatest familiarity with the facts of the litigation, and thus "are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995); *see also Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.").

Class Counsel has extensive experience in class action litigation, and especially wage and hour class actions. (Buchsbaum Decl., ¶¶1-8) Based on this experience, Class Counsel is well qualified to conduct the proposed litigation and to assess its settlement value. Plaintiff's counsel believes the proposed Settlement is fair and adequate to Class Members. (*Id.*, at ¶37.) This factor, too, weighs in favor of approval. *Ontiveros v. Zamora*, 303 F.R.D. 356, 371 (E.D. Cal. 2014) ("The court gives considerable weight to class counsel's opinions regarding the settlement due to counsel's experience and familiarity with the litigation. Counsel's assertion that the settlement is fair, adequate and reasonable is a factor supporting the court's final approval of the agreement.").

### F.    There are No Notices of Objection to the Class Settlement.

The Settlement has been well received by the Class Members—not a single Class Member objected to the Settlement. (See Bench Decl., at ¶ 10.) Specifically, no objections have been made as to the Gross Fund Value, requested Attorneys' Fees and costs, Service Award, Settlement Administration, or the allocation for PAGA payments. Further only one (1) Class Member out of 33 total members opted out of the Settlement. (*Id.* at ¶ 9.)

Here, the lack of objectors and a singular opt out speaks volumes about the fairness, reasonableness, and adequacy of this Settlement. Accordingly, the Settlement as a whole is presumed to be fair, reasonable, and adequate, and the Court should grant final approval of the Settlement in its entirety.

## VI.   PLAINTIFF'S PROPOSED SERVICE AWARD IS REASONABLE AND SHOULD BE APPROVED.

Named plaintiffs in class-action litigation are eligible for reasonable service awards.[3] Such awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009) (citation omitted). Courts have broad discretion to approve service awards for class representatives (*see In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000)), which "are fairly typical in class action cases." *Rodriguez*, 563 F.3d at 958. In evaluating the appropriateness of service awards, courts may consider "relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions … the amount of time and effort the plaintiff expended in pursuing the litigation … and reasonabl[e] fear[s of] workplace retaliation." *Staton*, 327 F. 3d at 977 (citation omitted).

Here, Plaintiff respectfully requests a service award of $1,500, a reasonable award intended to compensate her for the critical role she played in this case, including the time and effort undertaken in helping secure the result obtained on behalf of the Class Members, and the significant reputational risk Plaintiff took by publicly affiliating herself with litigation against her employer. Notwithstanding these risks, Plaintiff remained in the case and saw it through to its excellent outcome, while agreeing to a general release of claims. This substantial sacrifice supports the service award sought here. *See Schaffer v. Litton Loan*

---

[3] "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 300 (N.D. Cal. 1995) (named plaintiff received $50,000 for work in class action).

ACTIVE 715476422v2

*Servicing, LP*, No. CV 05-07673 MMM (JCx), 2012 WL 10274679, at *18 (C.D. Cal. Nov. 13, 2012); *Millan v. Cascade Water Services, Inc.*, No. 1:12-cv-01821-AWI-EPG, 2016 WL 3077710, at *12 (E.D. Cal. June 2, 2016) (reasoning that service awards "are particularly appropriate in wage-and-hour actions where plaintiffs undertake a significant 'reputational risk' by bringing suit against their present or former employers.").

Accordingly, Plaintiff's requested service award is reasonable and should be approved.

## VII.   THE REQUESTED ATTORNEYS' FEES AND COSTS ARE REASONABLE AND SHOULD BE APPROVED.

In a certified class action, the Court may award reasonable attorneys' fees and costs that are authorized by the parties' agreement." *Villafan*, 2021 U.S. Dist. LEXIS 249763, at * 20 (quoting Fed. R. Civ. P. 23(h)). Here, pursuant to the Settlement, Class Counsel requests a Fee Award of twenty-five percent (25%) of the Gross Fund Value of $25,000 (i.e., $6,250) plus costs of $2,000 for Class Counsel's Costs.

When, as here, "counsel recovers a common fund that confers a 'substantial benefit' on a class of beneficiaries, counsel is 'entitled to recover their attorney's fees from the fund.'" *Villafan*, 2021 U.S. Dist. LEXIS 249763 at *21 (*quoting Fischel v. Equitable Life Assurance Soc'y*, 307 F.3d 997, 1006 (9th Cir. 2002)). The Ninth Circuit considers the following factors in awarding a percentage of the common fund as attorneys' fees: (1) the results achieved; (2) the risk of litigation; (3) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (4) awards made in similar cases. *See Vizcaino v. Microsoft Corp.*, 290 F. 3d 1043, 1048–50 (9th Cir. 2002). All of these factors support the requested award here.

Given the excellent result achieved in this case and the effort expended to achieve it, 25% is warranted. Here, there was no guarantee of compensation or reimbursement. (Buchsbaum Decl., ¶38). Instead, counsel undertook all the risks of this litigation on a completely contingent-fee basis. (*Id*.). Plaintiff's counsel incurred the risk of non-recovery after a substantial investment of time, money, and resources, and have done so since the

inception of the Action without any payment or compensation. (*Id*.). Defendant's vigorous defense further confronted Class Counsel with the prospect of recovering nothing or close to nothing for their commitment to and investment in the case. (*Id*.). This is no small burden for any firm. (*Id*.).

Further, Class Counsel requests an attorneys' fee award of 25% of the common fund. This is reasonable across similar cases. *See, e.g., Pokorny v. Quixtar, Inc.*, No. C 07-0201 SC, 2013 U.S. Dist. LEXIS 100791, at \*4 (N.D. Cal. Jul. 18, 2013) ("The Ninth Circuit uses a 25% baseline in common fund class actions, and in most common fund cases, the award exceeds that benchmark, with a 30% award the norm absent extraordinary circumstances that suggest reasons to [adjust] the percentage.") (internal quotation marks omitted).

In addition to reasonable attorneys' fees, Class Counsel is entitled to the reimbursement of their reasonable costs. *See* Fed. R. Civ. P. 23(h); *see also Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (holding that attorneys may recover reasonable expenses that would typically be billed to paying clients in non-contingency matters.); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995) (approving reasonable costs in class action settlement.)

Accordingly, Class Counsel's requested attorneys' fees and costs are reasonable and should be approved.

## VIII. <u>THE SETTLEMENT ADMINISTRATION COSTS ARE FAIR AND REASONABLE AND SHOULD BE APPROVED.</u>

As set forth in the accompanying ILYM Group Declaration, the total costs incurred and to be incurred by ILYM Group for the notice and settlement administration process are $700.00. (Bench Decl. at ¶ 16.) The costs incurred and to be incurred, include, but are not limited to, (a) printing and mailing the Class Notice, (b) receiving and processing Requests for Exclusion, (c) establishing and maintaining a qualified settlement fund account and calculating individual settlement shares and individual PAGA payments, (d) processing and mailing payments, (e) handling tax withholdings as required by the Settlement Agreement

and the law, (f) preparing, issuing, and filing tax returns and other applicable tax forms, (g) handling the distribution of any unclaimed funds, and (h) performing other tasks as the Parties mutually agree to and/or the Court orders ILYM Group to perform. (*Id*. at ¶¶ 3, 16)

Accordingly, the Court should grant final approval payment to ILYM Group, as a necessary third-party administrator.

## IX.    **CONCLUSION**

For all these reasons, the Parties request that the Court grant final approval of the Settlement and all payments allocated and provided for by the Settlement Agreement.

Respectfully submitted,

Dated: October 13, 2025                    Law Offices of Buchsbaum & Haag LLP


By:  */s/ Brent S. Buchsbaum*
Brent S. Buchsbaum
Attorney for Plaintiff Stacey Campbell

Dated: October 13, 2025                    Greenberg Traurig, LLP


By:  */s/ Ashley Farrell Pickett*
Ashley Farrell Pickett
Attorneys for Defendant
Kering Eyewear USA, Inc.

ACTIVE 715476422v2

## <u>ATTESTATION</u>

Pursuant to the Central District of California's Local Rule 5-4.3.4(a)(2)(i), I attest that all other signatories listed, and on whose behalf this filing is submitted, concur in the filing's content and have authorized its filing.


Dated: October 13, 2025

_/s/ Ashley Farrell Pickett_
Ashley Farrell Pickett

JOINT MOTION FOR FINAL APPROVAL

ACTIVE 715476422v2